127　606
136　⁴197

127　607
f151　¹518

127　607
e158　³379

WALTS *v.* WALTS.　.

1. WILLS—UNDUE INFLUENCE—EVIDENCE.

On an issue whether a will was procured by undue influence, evidence showing acts of undue influence subsequent to the execution of the will is admissible, in connection with other facts and circumstances in support of the charge.

2. SAME.

And evidence that testator's wife and son, who are charged with having exerted such influence, tried to exclude the other children from the sick room during testator's last illness, in the course of which the will was executed, is likewise admissible.

3. SAME—QUESTION FOR JURY.

On the contest of a will giving all of testator's property to his wife, executed in his last illness, it appeared that he had previously given each of his children $2,000, except C., to whom he had conveyed land worth $6,000, and that subsequently C. obtained from the testator mortgages to the value of $4,000, and a bill of sale of property worth $2,400. There was testimony of statements by deceased indicating a desire to treat all of his children alike, but that efforts were being made to induce him to do otherwise; of admissions by the wife that she had tried to prejudice deceased against some of the children; and also testimony tending to show that undue influence was exercised in obtaining the bill of sale, that C. and his mother were intimately associated with the deceased, and that they endeavored to exclude the other children from the sick room. *Held,* that it was error to withdraw from the jury the question of undue influence in the procurement of the will.

4. SAME—TESTAMENTARY CAPACITY—EVIDENCE.

The rules laid down in *Prentis* v. *Bates*, 93 Mich. 240, with reference to the competency of witnesses to express an opinion as to the mental capacity of a testator, are approved.

5. TRIAL—CONDUCT OF COURT.

The necessity for care on the part of a trial judge to avoid impressing upon the jury his views of the tendency and weight of the testimony is emphasized.

Error to Shiawassee; Smith, J.   Submitted June 5, 1901.   Decided July 10, 1901.

Charles E. Walts presented for probate the last will and testament of Peter Walts, deceased. The will was disallowed in the probate court on a contest by William H. Walts and others, heirs at law of deceased, and Ann C. Walts, widow and sole legatee, appealed to the circuit court, where the will was sustained. Contestants bring error. Reversed.

*William P. Van Winkle*, for appellants.

*Selden S. Miner* and *Watson & Chapman*, for proponent and appellee.

MONTGOMERY, C. J.   Peter Walts died on the 13th of May, 1899, leaving surviving his widow, Ann C. Walts, five children, and four grandchildren, who are children of a deceased daughter. The value of the estate does not very clearly appear, but it is to be inferred that, at the date of the execution of the will in question, he had quite a large estate, consisting of a farm, personal property, and mortgages. Deceased had advanced to each of his children other than Charles about $1,600, and had deeded to Charles 100 acres of land, worth, according to contestants' testimony, $6,000. On the 13th of February, 1899, Theodore M. Euler went to see deceased at the request of Charles, who testified that his father desired him to have Mr. Euler call. On this occasion Mr. Euler testified that he was given instructions for the preparation of a will. He testified that Mr. Walts told him that he had advanced each of the children $1,600, and desired to give them $400 more each, making $2,000; that he wanted $500 used for a monument, and wanted 100 acres of land, which he owned, willed to his wife, and wanted the personal property to go to her absolutely. Mr. Euler did not prepare the will at the home of Mr. Walts, but, desiring to refer to a form which he had, prepared the will at his own

home, and returned with it, ready for signature, on the 15th of February.   On that date it was signed by deceased, and witnessed by Mr. Euler and Charles Walts.   The will was further witnessed by J. H. Hutchings on the 30th of March.   Mr. Hutchings was called in by Mr. Euler to witness the will on his own motion, for the reason that some question had arisen in his mind as to whether it was legal to have the will witnessed by an heir.   This will made no provision for a monument.   It gave to Mrs. Walts absolutely all the real estate, mortgages, and personal property.   The $400 to each of the children was distributed to them in decedent's lifetime, with the exception of Charles, who fared much better, as will be seen later on.   This will is contested on the ground of incompetency and undue influence.   The trial court withdrew from the jury all question of undue influence, but submitted the question of mental competency to the jury, who found for proponent, and contestants bring error.

The record contains an unusually large number of assignments of error, even for a will case.   It would extend this opinion beyond a reasonable limit to attempt to discuss these assignments in detail, but the general features of the case may be dealt with.   The most important question is whether the circuit judge was right in withdrawing the question of undue influence from the jury. In determining that question we are not to be understood as expressing any opinion as to what the fact is; indeed, we are not able to do so, as the evidence is not all returned; but the simple question is whether there was any testimony tending to show undue influence.   The theory of contestants' counsel is that Charles and his mother were working in harmony, and that they united their efforts to secure to themselves almost the entire estate to the exclusion of the other children, who were, at least equally with Charles, the natural objects of deceased's bounty.   In support of this theory he points to the testimony showing that deceased expressed to Mr. Euler the desire to treat

all his children alike, and to the testimony of Charles that that had always been understood to be his father's wish; to testimony showing that, before. the will was made, Charles had received $6,000 worth of property, and the other children but $1,600 each; to testimony that Charles obtained of his father mortgages to the value of $4,000 after the will was made, and also a bill of sale of personal property worth about $2,400; and to certain specific testimony, a portion of which will be referred to. It appears that Charles sent his wife to Mr. Euler, asking him to come to Mr. Walts, to see if he could not get Mr. Walts to do the same by Charles as he had by the other children. On that same day Mr. Euler, in company with Mr. Hutchings, visited the Walts homestead, and a bill of sale of the personal property worth about $2,400 was drawn up and signed. This instrument was drawn by Mr. Hutchings. Mr. Euler testified he did not think Mr. Walts wanted to make the bill of sale, but finally made it. He also testified that Charles and his father did not agree about the matter at first, and Peter Walts asked him ( Euler ) to advise him about it, and that Euler replied that he had no suggestions to make. Charles testified in probate court that he might have told his father that somebody would take the stock off the farm if he didn't make a bill of sale. There was testimony that on March 29th Charles shook his fist in his father's face, and said, " If you don't do as you agreed, I won't do as I agreed."

That this testimony has some tendency to show undue influence seems clear; and that evidence showing acts of undue influence at a date subsequent to the execution of the will is competent, in connection with other facts and circumstances, in support of the charge of undue influence exerted at the earlier date, see *Porter* v. *Throop*, 47 Mich. 313 ( 11 N. W. 174 ); *Haines* v. *Hayden*, 95 Mich. 349 ( 54 N. W. 911, 35 Am. St. Rep. 566 ). There was testimony that Mrs. Peter Walts and Charles had abundant opportunity to exert influence upon Peter Walts. The wife was living with him in the house, and the son in a house but a

few feet away, and admittedly looking after his father's business in large part. Testimony was offered (and was competent) tending to show efforts to exclude the other children from the sick room, or from seeing their father in the absence of Charles or his mother. All this testimony was subject to explanation, and the. exclusion from the sick room might have been justified. But it was admissible, and was for the jury to weigh. There was also testimony of admissions by Mrs. Peter Walts that she had tried to prejudice deceased against his son William. There was testimony of statements of deceased, prior to the making of the will, showing his state of mind, and indicating that efforts were being made to influence him. These facts and circumstances, when taken in connection with testimony showing the weakened condition of decedent, are sufficient to carry the case to the jury upon the question of undue influence. As was said in *Rivard* v. *Rivard,* 109 Mich. 98 (66 N. W. 681, 63 Am. St. Rep. 566):

"Undue influence is not exercised openly, but, like crime, seeks secrecy in which to. accomplish its poisonous work. It is largely a matter of inference from facts and circumstances surrounding the testator, his character and mental condition, as shown by the evidence, and the opportunity possessed by the beneficiary for the exercise of such control."

In a number of instances the circuit judge refused to permit witnesses for the contestants to express an opinion as to the competency of decedent. We refrain from discussing these assignments in detail, as it is claimed that by a later ruling the court intended to admit the testimony of these witnesses. We are satisfied that too strict a rule was laid down, but we cannot make our understanding of the law clearer than we have in *Prentis* v. *Bates,* 93 Mich. 240 (53 N. W. 153).

Complaint is made that the learned circuit judge gave expression to his views of the effect of evidence in the presence of the jury. We are not prepared to say that

this complaint is wholly without merit.   We have fre-
quently called attention to the necessity of great care on
the part of trial judges to avoid impressing upon the jury
the judge's view of the testimony.

The judgment is reversed, and new trial ordered.

The other Justices concurred.