WATERS *v.* REED.

1. WILLS—UNDUE INFLUENCE—INSTRUCTIONS.

An instruction on a will contest that a devise of the bulk of testator's property to a woman sustaining illicit relations with him is a strong circumstance tending to show undue influence is not erroneous, taken in connection with the further instruction that such circumstance is not of itself sufficient to invalidate the will.

2. SAME.

An instruction that the evidence as to testator's mental and physical condition is to be considered "solely with a view to determining whether an evil-disposed person could have obtained" an undue influence over him is not open to the objection that it authorizes a finding of undue influence on mere presumption, where the jury are further explicitly instructed that there must be affirmative proof that such influence was in fact exerted.

3. SAME—SUFFICIENCY OF EVIDENCE.

At the immediate time of the execution of a will, there was no attempt to influence the testator; but he was old, debilitated, and mentally weakened, and was living in illicit relations with a woman who had caused an estrangement between himself and wife, and who, with her infant child, of which testator was the putative father, was the chief beneficiary under the will. The woman was 30 years of age, and strong physically, and had abundant opportunity to exercise undue influence if so disposed; and there was evidence of her having spoken to testator disparagingly concerning his son, saying that he would not care for testator. and that she was the only one who would. *Held*, that the question of undue influence was properly submitted to the jury.

Error to St. Clair; Tucker, J., presiding. Submitted November 14, 1901. Decided December 21, 1901.

Hannah Waters presented for probate the last will and testament of Peter W. Reed, deceased. The will was allowed in the probate court, and Robert Reed and Annie

Smith, heirs at law of said deceased, appealed to the circuit. From a judgment for contestants, proponent brings error. Affirmed.

*John B. McIlwain* and *Frank Whipple* (*Lincoln Avery* and *C. A. Kent*, of counsel), for appellant.

*George G. Moore, Herman W. Stevens*, and *John L. Black*, for appellees.

MONTGOMERY, C. J. This is error to review the proceedings of the circuit court, where, on appeal from the probate court, the will of Dr. Peter W. Reed, deceased, was refused probate. The formal execution of the will was admitted, but its probate was contested upon the two grounds of mental incompetency and undue influence.

The testimony showed that Dr. Reed was, at the time of the execution of the will, which was shortly before his death, about 70 years of age. He had been twice married. His first marriage was in 1849, and, by his first wife, he had three children, one of whom (Robert) is living. The daughter of another son was living at the time of Dr. Reed's death. In 1868 Dr. Reed was divorced from his first wife, Ann, and, during the same year, married his second wife, Caroline. There was no issue of this marriage. The children stayed with the mother, and in a subsequent litigation, in which Ann Reed sought to compel Dr. Reed to support her, Robert was a witness for the mother. There was testimony tending to show, however, that whenever Robert visited Port Huron, Dr. Reed's home, he visited his father, and there was some testimony that the doctor spoke in high terms of his son, and expressed a purpose to leave some portion of his property to him. Robert Reed's visits to Port Huron were, however, very rare, and but little intercourse had taken place between the father and son for 20 years. The granddaughter lived at Port Huron, and appears to have had but one interview with Dr. Reed, which was one of her own seeking.

Dr. Reed had had a large practice for many years, and

had accumulated a considerable property. For some years before his death he had been suffering from partial paralysis, and there was testimony in the case tending to show that, as the result of disease and the infirmities of age, his mental capacity was greatly weakened. In the year 1896, and from that time on, Dr. Reed maintained illicit relations with Hannah Waters, the proponent of the will. Hannah Waters gave birth, in 1897, to a child, who is one of the beneficiaries named in the will. The illicit relations between these parties resulted in a divorce between Dr. Reed and his second wife, and, finally, the Waters woman took up her residence in the Reed house, and remained there with Dr. Reed, day and night, up to the time of his death. For a period of seven weeks Miss Waters was alone in the house with Dr. Reed. During one week a domestic was employed. The will, after some bequests to Dr. Reed's brothers, gave the balance of the estate to Hannah Waters, in trust for the child, supposed to be the child of Dr. Reed and Hannah Waters, with reversion, in case of the child's death before reaching the age of 21 years, to Hannah Waters.

This is but a very brief statement of the facts, but, perhaps, sufficient as an outline of the case. At the conclusion of the testimony, the circuit judge, in a charge evidently prepared with great care, withdrew from the consideration of the jury the question of mental incompetency, but submitted to the jury the question of undue influence.

It may be well to deal first with the special objections to the charge. In the course of his charge the circuit judge instructed the jury as follows:

"I instruct you that, where a man devises the bulk of his property to one who stands in the relation to him admittedly occupied by Hannah Waters in this case, such devise is always carefully examined, and that it is a strong circumstance tending to show undue influence."

Counsel for proponent say this is the rule only where there is some proof of undue influence. The circuit judge, in another portion of his charge, made clear that rule, for he instructed the jury as follows:

"As I have said, the giving of the great bulk of his property to Hannah Waters and the child, Priscilla Marie, after having associated with Hannah Waters in the unlawful intimacy hereinbefore spoken of, and under the circumstances admitted in this case, is a strong circumstance, to be taken into consideration with the other facts and circumstances in the case, as indicating the probability of the exercising of the power of undue influence over the doctor. You are, however, instructed that these facts and circumstances, standing alone,—that is, the fact of the disinheriting of his children and the giving of his property to Hannah Waters and her child,—would not, of themselves and alone, be sufficient to warrant the setting aside of this will. It is also said that Hannah Waters had the opportunity for the exercise of such influence as she may have had with the doctor, if she desired to use it. You are instructed, upon that point, that opportunity alone will not suffice to prove the exercise of undue influence."

This instruction could not have left the jury in doubt as to the rule, and we think it correctly states the law. See 1 Underh. Wills, § 150. The question of whether there was any proof justifying the submission of this question of undue influence to the jury will be treated of in another connection.

Another extract from the charge of the court is criticised, which is given as follows:

" You are to consider the evidence relating to Dr. Reed's mental and physical condition solely with a view to determining whether or not you believe it possible or likely that an evil-disposed person could have obtained sufficient control or influence over the doctor to have subordinated his will to others."

It is urged that this was, in effect, telling the jury that the testamentary act was the result of undue influence if possible or likely that Hannah Waters could have obtained sufficient control over his will to destroy free agency; and it is said, "This would allow the most sacred rights to be set aside on presumption."

But this brief extract from the charge by no means fairly represents the instructions. In another portion of the charge the court instructed the jury as follows:

. " To admit the establishment of the fact of undue influence, there must not only be opportunity therefor, and a person willing to avail herself of that opportunity, but a mind sufficiently weakened by age, disease, sexual indulgence, or other cause, sufficiently shown, to be under the control of and dominated by the person seeking to exercise such undue influence, to warrant the assumption that it may have occurred. In other words, in this case, to warrant the finding that Hannah Waters exercised undue influence over Dr. Reed, you must find, by the fair preponderance of evidence, not only that an unlawful sexual intercourse had existed between them, not only that she had opportunity for the exercise of such influence, if she desired, but that the doctor's will power had become sufficiently weakened by age, disease, sexual excesses, or other causes, to permit of the probability of such influence being exercised to the extent of subordinating his will to hers. You must, as I have said to you, not only find these facts to exist, by a fair preponderance of the evidence, but you must find, in addition to all that, and by a fair preponderance of evidence, that Hannah Waters took advantage of these circumstances, and did, as a matter of fact, exert undue influence upon the doctor,—that is, that she fraudulently coerced the doctor, and so overcame his free will as to cause him to make a different will than be would have made if it had not been for such influence."

There was no possible room for mistake as to the effect of these instructions. Emphasis was placed upon the necessity of affirmative proof of the fact of undue influence.

The principal question urged in the case, and pressed upon our attention with great vigor by proponent, is that of whether there was any evidence tending to show the exercise of undue influence which justified the submission of the case to the jury. It is undoubtedly true that the testimony relating to the ·exact time of the execution of this instrument strongly supports the proponent's case. The testimony of Judge Whipple, who drew the will, and of the witnesses who attested it, clearly demonstrates that, at the precise time of the execution of the will, no immediate, present influence was being exerted to control the mind and will of Dr. Reed. But this is not decisive of

the case. If an unwarranted influence had been exerted theretofore, the effect of which still remained, and which was sufficient in fact to subordinate the will of Dr. Reed to that of Hannah Waters, this influence was undue, as much as though it were exerted at the very time that the will was executed. See *Potter's Appeal*, 53 Mich. 106 (18 N. W. 575). Indeed, it is recognized by the authorities that undue influence is usually exercised secretly, and in a clandestine manner; and, as was said by Mr. Justice GRANT in *Rivard* v. *Rivard*, 109 Mich. 111 (66 N. W. 686, 63 Am. St. Rep. 570):

"It is largely a matter of inference from facts and circumstances surrounding the testator, his character and mental condition as shown by the evidence, and the opportunity possessed by the beneficiary for the exercise of such control."

See, also, 1 Underh. Wills, § 132.

In this case an examination of the record satisfies us that there was some testimony tending to show the exercise of undue influence by Hannah Waters. We cannot ignore, in dealing with this question, the debilitated condition of Dr. Reed, his mental weakness, his sacrifice of all the dearest relations of life, and his yielding to an infatuation for this woman. Hannah Waters was, at the time, 30 years of age, apparently a woman strong physically, and we cannot read this record without reaching the conclusion that she had a wonderful influence over Dr. Reed. There was testimony tending to show statements depreciating the character of Dr. Reed's son, Robert, and a declaration that Dr. Reed's son would not assist him in extremity, but that she, Hannah Waters, was the only one who would care for him. There was testimony of constant opportunity to exercise this influence, and enough from which just inferences might be drawn by the jury that such influence was exerted. We feel that the court was amply justified in submitting this question to the jury.

Numerous other questions are raised and discussed in

the briefs of counsel, which have had attention, but none of which, we think, show error justifying a reversal of the case. The charge of the court was exceptionally full and clear, and a careful reading of it satisfies us that every right of the proponent was carefully guarded.

The judgment will be affirmed.

The other Justices concurred.