*In re* LOREE'S ESTATE.

LOREE *v.* VEDDER.

1. WILLS—UNDUE INFLUENCE.

Error was committed by the trial court in excluding evidence of violent conduct of the testator's wife towards him and of mastery over him by her, offered to show undue influence in the making of his will, and rejected on the ground that it occurred more than six years previous and was too remote.

2. SAME — EVIDENCE — ATTORNEY AND CLIENT — PRIVILEGED COMMUNICATIONS.

In a contest for the probate of a will between parties interested in the estate, communications between the testator and his attorney relating to the preparation of the will are not privileged.

3. SAME—PREVIOUS TESTAMENTARY ARRANGEMENTS—EVIDENCE.

It is proper to show in such a case the contents of a previous will made by the testator.

4. SAME—HEARSAY RULE—STATEMENTS OF PROPONENT.

Statements of the proponent, who is charged with undue influence, are admissible to show motive, though not made in the testator's presence.

5. SAME—HUSBAND AND WIFE—PRIVILEGE.

Conversations between husband and wife in the presence of third persons, and statements made by either to third persons relative to the disposition of the property, are relevant to the issue of undue influence.

6. SAME— UNDUE INFLUENCE— CIRCUMSTANTIAL EVIDENCE— BURDEN OF PROOF.

While the burden of proof in contesting a will is on the contestants, a verdict should not be directed where undue influence is inferable from all the surrounding circumstances.

7. SAME—REVENGEFUL MOTIVE—HUSBAND AND WIFE.

Circumstantial evidence of an intent to procure a change in testator's will against the interest of contestants, based on an unjustifiable revengeful motive in the mind of his wife, with other corroborative testimony, warrants the submission of the question of undue influence to the jury.

Error to Livingston; Miner, J. Submitted June 16, 1909. (Docket No. 112.) Decided October 4, 1909.

Catherine Loree presented for probate the last will and testament of Joseph Loree, deceased. The will was allowed in the probate court, and Alma Vedder and others appealed to the circuit court. A judgment for proponent on a verdict directed by the court is reviewed by contestants on writ of error. Reversed.

*Louis E. Howlett* and *Edmund C. Shields*, for appellants.

*William P. Van Winkle*, for appellee.

McALVAY, J. Contestants and appellants are the granddaughters of deceased, being children of his deceased daughter, Mrs. Nettie Wooden. From the allowance of a will to probate by the probate court of Livingston county two appeals were taken to the circuit court of said county—one by the contestants above named, the other by two daughters of deceased. These appeals, by consent of the parties and an order of the court, were combined at the trial, and tried as one case before the court and a jury. The contest of the will was made upon several grounds; but only one relied upon, namely, the alleged undue influence which was claimed to have been exercised over the testator by his wife. At the close of the case the court instructed the jury to return a verdict for proponents, and a judgment was duly entered thereon sustaining the will. From this judgment all the contestants joined in removing the case to this court by writ of error.

The testator, Joseph Loree, was 79 years of age at the time of his death, on March 2, 1908. He left surviving him, his widow, who was 12 years younger than he, three daughters, two sons, and two granddaughters, who are the principal contestants. The testator's estate consisted of about 1,000 acres of farming lands, and personal prop-

erty, all of the claimed value of $75,000. An instrument bearing date August 17, 1903, as modified by a codicil attached, bearing date July 30, 1906, was offered for probate by the widow, Catherine Loree, proponent, as the last will and testament of Joseph Loree. The record of the trial upon the contest of this will shows that the testator, although coarse and rough, was a man of ability and shrewdness in business matters. He was addicted to the use of intoxicating liquors, and often became intoxicated. He had been admitted to the bar of Livingston county, and had tried some justice's court cases. He was a kind man, and affectionate toward his family. During the last 10 or 12 years of his life he became weak physically, and did no labor. His mind was somewhat weakened, and, on account of his condition, he required care and attention from members of the family. His wife, the proponent, was a woman of strong individuality. She was a good business woman, strong willed and domineering. The deceased often consulted her in business transactions, and deferred to her judgment. She retained the full vigor of her mind and body during his lifetime, taking care of him and doing all of the housework without assistance. In the year 1899 the mother of contestants, who at the time were of the ages of 16 and 13 years, respectively, left her husband and began proceedings for a divorce on the ground of extreme cruelty. On hearing in this divorce case in May, 1900, these two children were produced in court as witnesses by the father, and gave testimony favorable to him. There is no dispute but that this circumstance greatly angered the proponent. She always insisted in the presence of the testator and others that they had committed perjury. That the girls testified truthfully is established by this record, and is not contradicted.

In support of their claim that the will was procured by undue influence exercised over testator by Catherine E. Loree, his wife, contestants produced evidence to show her hostility toward them, which was introduced as tend-

ing to establish the following facts: The mother of contestants died within a week after her divorce was granted. At the time she was dying the question as to whether the two daughters should be sent for was discussed. The grandfather asked to have it done, but the grandmother declared they must not come. An uncle protested that such conduct would be a disgrace and went after them. The grandmother would not allow the daughters to place a wreath upon their mother's coffin. She requested the minister who officiated at the funeral to speak disparagingly of these girls, and insisted that they must not appear as chief mourners. The reason she gave for this conduct was because the girls had been witnesses for their father, and had testified falsely. There is evidence in the record tending to show that she for the same reason expressed a determination to prevent the girls from getting anything left by their mother. It also appears soon after the death of her daughter that she said in the presence of the testator that, on account of the girls' testimony, there would be a new will, and they would be cut off. The instrument offered for probate was executed August 17, 1903. It appears that it was similar to a former will executed June 21, 1900, with the exception of two changes. In this will contestants Alma and Elvira were given 40 acres in fee and $500 in cash to share the same equally. The codicil revoked the devise of the fee to them in the land, and made it a life estate.

Evidence was also introduced for the purpose of showing the expressed intention of testator to divide his property by will equally among his children, and that he intended to give these two contestants a certain farm of 100 acres, and, also, after the will was made, that it was not according to his wishes; also, that during his last sickness he expressed a wish to change it, but proponent objected, saying he was too sick, and it was then too late.

On behalf of proponent no witnesses were offered except to make a *prima facie* case to admit the will to probate. Proponent was not produced as a witness, nor was

evidence offered on her behalf contradicting the proofs of contestants. The case is somewhat unusual, in that the undue influence claimed was not exercised in favor of proponent herself, but against these contestants.

Upon the trial, contestants, to show undue influence, were not permitted to introduce evidence of facts which occurred more than six years before this will was executed, on the ground that it was too remote. Eleven of the assignments of error are based upon this ruling of the court. Contestants claimed, and offered to show, that proponent had assumed control and mastery over testator's mind; that she had, more than six years before the execution of this will, used extreme personal violence towards him, and from that time had controlled and dominated him. In *Beaubien* v. *Cicotte*, 12 Mich. 488, the court said:

"In all cases of this character it has been customary, as the reports show, to allow a wide range of inquiry into the family relations, and the terms upon which they have lived. It would be impossible to obtain a clear idea concerning motives and probabilities without it. These cases, as before intimated, are determined generally upon circumstantial evidence; and it must be received upon all points tending to throw light upon the various family relations."

No good reason is apparent why proof of the relations of these parties relative to the dominance of proponent over testator should be arbitrarily limited to the term of six years. To show when this began and its continuance up to and including the time of the execution of the will and codicil was material and relevant to the issue as a part of the evidence necessary to establish undue influence. The testator for several years had given up physical labor, and had grown gradually weaker. The wife was vigorous, and the claim made was that for a series of years she had dominated him, and had exercised undue influence in procuring this will. It was a question of fact whether this was true or not, which could only be determined upon

all the material evidence which could be produced.  *Potter's Appeal*, 53 Mich. 112 (18 N. W. 575); *Rivard* v. *Rivard*, 109 Mich. 110, 111 (66 N. W. 681, 63 Am. St. Rep. 566).  See, also, *Waters* v. *Reed*, 129 Mich. 135, 136 (88 N. W. 394).  The court was in error in excluding such evidence.

The court, on cross-examination of the attorney who drew the will, excluded and struck out all testimony relative to a former will drawn by him and executed by the testator, on the ground that, by reason of the relation of attorney and client, communications between the witness and testator were privileged.  On direct examination this witness, who was called by proponent to establish this will, had testified that the will sought to be probated was copied from a former will, which he had drawn, with but two changes.  The contents of this former will and the statements of the testator made at the time it was being considered were material to the case.  Relative to the materiality of the contents of a former will, this court has said in *Beaubien* v. *Cicotte, supra:*

"The former wills, and other pecuniary arrangements for Mrs. Beaubien, connected with them, were properly received in evidence.  It is true, of course, that making one will does not, of itself, render it at all unlikely that another will may be substituted; but previous preferences and plans may have a plain bearing upon an issue, where the question arises whether the testator has understandingly, and of his own free will, changed his settled views.  No case has been cited holding such proof inadmissible.  It is of very frequent occurrence in the cases reported."

The court refused to allow the attorney to testify at all concerning the former will.  The great weight of the authorities and the text-writers is that communications between attorney and client during the preparation of a will are not privileged.  This rule, where the contest is between parties not strangers to the estate, appears to be universal, except where a statute controls.  *In re Young*, 17 L. R. A. (N. S.) 108, and notes.(33 Utah, 382, 94 Pac

731, 126 Am. St. Rep. 843). The court was in error in excluding this evidence.

The court also refused to allow this witness to testify to statments made by Mrs. Loree relative to what disposition of the property in regard to children or grandchildren would be made by the testator, unless they appeared to have been made in her husband's presence, or she had been connected with the case. The first ground is not tenable, and the second went merely to the order of proof, to which no objection had been made. In *Re Young*, *supra*, it is held that the attorney could testify as to statements made by the wife who is present and takes part in conversations with respect to a proposed will. Statements made by her at other times, whether in testator's presence or absence, were material upon the question of undue influence and her attitude towards these contestants. The witness should have been permitted to answer them.

As to other errors assigned upon the exclusion of evidence we need say but little. We have, we hope, clearly indicated that all evidence which tends to prove or disprove the main contention that this will was procured by the undue influence of Mrs. Loree should be admitted. This includes conversations and statements made by testator or his wife to others, or to each other in the presence of others. We do not consider that the quarrels with the sons appear to be material in this case, as it is narrowed to one proposition, which does not require restatement.

The remaining question relates to the verdict instructed for the proponent. The verdict was so directed, because, in the opinion of the court, no evidence of undue influence had been produced. A consideration of all of the evidence in the case does not support the conclusion of the court. An analysis of the cases discloses that in contesting a will on account of undue influence the burden of proof is always upon the contestant. The case must be determined generally upon circumstantial evidence. This is necessarily so by reason of the secret and insidious means by which

such influence is usually exercised. *Rivard* v. *Rivard*, 109 Mich. 111 (66 N. W. 681, 63 Am. St. Rep. 566); *Walts* v. *Walts*, 127 Mich. 611 (86 N. W. 1030; *Waters* v. *Reed*, 129 Mich. 136 (88 N. W. 394); *Wilson* v. *Parker*, 130 Mich. 641 (90 N. W. 682).

In *Walts* v. *Walts, supra,* where all the testimony as to undue influence was taken from the consideration of the jury, the court, after giving a brief outline of this testimony, said:

"All this testimony was subject to explanation, * * * but it was admissible, and was for the jury to weigh."

And further:

"There was also testimony of admissions by Mrs. Peter Walts that she had tried to prejudice deceased against his son William. There was testimony of statements of deceased, prior to the making of the will, showing his state of mind, and indicating that efforts were being made to influence him. These facts and circumstances, when taken in connection with testimony showing the weakened condition of decedent, are sufficient to carry the case to the jury upon the question of undue influence."

The evidence in this case, in certain particulars, is very similar to that in the case at bar, and we also have, in the case under consideration, substantive proof tending to show the attempt to exercise undue influence.

Counsel for proponent put great reliance upon cases where the courts have held that the wife may exercise certain influence over the husband in the matter of the disposition of his property, even to the point of argument and persistent urging. An examination of such cases discloses that the influence exercised was from a proper motive, and with a proper purpose. We are referred to no case like the case at bar, and we are unable to find any such case where the motive was a revengeful one, and the purpose to wrongfully injure those who, in fact, were innocent of any wrongdoing. The weight to be given to the evidence in the case is for the jury to determine, and

this court expresses no opinion upon its probative value. We simply determine that the case should have been submitted to the jury under proper instructions.

The judgment is reversed, and a new trial ordered.

BLAIR, C. J., and GRANT, MONTGOMERY, and BROOKE, JJ., concurred.