# STATE OF MICHIGAN

# COURT OF APPEALS

---

BILL and DENA BROWN TRUST, by MARK
BROWN, Trustee,

        Plaintiff-Appellant,

v

GERI GARCIA,

        Defendant-Appellee.

FOR PUBLICATION
October 20, 2015
9:00 a.m.

No. 322401
Montmorency Circuit Court
LC No. 13-003254-CH

---

*In re* Estate of BILLIE MAX BROWN.

---

MARK BROWN,

        Appellant,

v

GERI GARCIA,

        Appellee.

No. 322402
Montmorency Probate Court
LC No. 13-007003

---

Before: MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

In these consolidated cases involving an action to quiet title in Docket No. 322401 and a will contest in Docket No. 322402, plaintiff Mark Brown appeals by right the trial court's order granting defendant Geri Garcia summary disposition with respect to plaintiff's claim that the trust agreement did not authorize the trustee's deed at issue. Plaintiff also appeals by right the trial court's order granting summary disposition with respect to plaintiff's claim of undue influence. For the reasons discussed in this opinion, we affirm.

-1-

I. SUMMARY OF FACTS AND PROCEEDINGS

Bill Brown (Bill) and Dena Brown (Dena) established an irrevocable trust as part of their estate planning that was intended to distribute their assets to various beneficiaries after both had died. After Dena passed away, Bill became the sole trustee of the trust. Bill, as trustee, conveyed the marital home that was a trust asset to himself by means of a "Lady Bird" quitclaim deed,[1] which provided that the property would pass to defendant Geri Garcia on his death if Bill did not otherwise dispose of the property during his lifetime. Bill did not otherwise dispose of the property before his death. Plaintiff Mark Brown , the successor trustee, asserts that Bill did not have the authority to convey the property to himself after Dena died because doing so was contrary to the intent of the trust that the property pass to the trust beneficiaries after the death of both original settlors. According to plaintiff, the "Lady Bird" deed, in essence, partially revoked an irrevocable trust. Plaintiff argues in his first issue that the trial court erred by ruling the terms of the trust permitted Bill's action.

Plaintiff argues in his second issue that defendant Geri Garcia was in a fiduciary relationship with Bill and exercised undue influence over Bill with respect to executing the "Lady Bird" deed. Plaintiff asserts that the trial court erred by granting defendant summary disposition regarding his undue influence claim because questions of material fact remain.

On June 8, 2007, Bill and Dena as husband and wife created the Living Trust Agreement of Bill M. Brown and Dena G. Brown (the trust). Bill and Dena also executed, on the same day, identical wills that provided for transfer of property to the trust, or if the testator's spouse did not survive and the trust no longer existed, then specific distribution provisions mirrored those of the trust. A year later, on June 11, 2008, Bill and Dena exercised their authority under the terms of the trust by amending it and their wills to alter the named beneficiaries. These amendments did not alter the terms of the trust at issue in this appeal.

On February 28, 2008, Bill and Dena acquired the subject property located at 10395 South Airport Road, Avery Township, Montmorency County, for $180,000. The former owners[2] conveyed the property by warranty deed to Bill and Dena as trustees of the trust. The Browns, because Dena had cancer, moved to this home to be closer to Bill's former daughter-in-law, Eunice Ruth Dahn (Ruth), who was a caregiver for both. Dena died on August 10, 2008.

---

[1] "It is named after Lady Bird Johnson, because allegedly President Johnson once used this type of deed to convey some land to Lady Bird." *In re Tobias Estate*, unpublished opinion per curiam of the Court of Appeals, issued May 10, 2012 (Docket No. 304852), op at 5 (citation omitted). A "Lady Bird" quitclaim deed conveys an enhanced life estate that reserves to the grantor "the rights to sell, commit waste, and almost everything else[.]" *Id.* See also Black's Legal Dictionary (10th ed), defining a "Lady Bird" deed as "[a] deed that allows a property owner to transfer ownership of the property to another while retaining the right to hold and occupy the property and use it as if the transferor were still the sole owner."

[2] One of the property's former owners was Yvonne Currie, who came to know the Browns as customers at the bank where she worked.

Defendant Geri Garcia was born in California on April 22, 1983, and immediately placed for adoption. In October 2009, Garcia was contacted by her birth mother, Pam Altz, who informed Garcia that her natural father was John Brown, the brother of Bill. Thereafter, Garcia contacted John, who rejected Garcia'a assertion that he was her natural father and also refused to provide a genetic sample for the purpose of testing.

At some point, Altz provided Garcia's telephone number to Bill, and he called Garcia. After Garcia wrote Bill a letter about herself and her family on August 19, 2010, Bill and Garcia regularly communicated by telephone and mail. In June 2011, Garcia flew from California to Michigan and visited Bill at his home. On January 12, 2012, Bill submitted genetic material for testing and comparison to samples from Garcia. The test results excluded Bill as being the possible father of Garcia but concluded that the probability the two were related was 97.7%, and that the "likelihood that the alleged relative is the biological relative of the tested child is 43 to 1." Bill apparently provided the test results to John, who responded in a March 8, 2012 letter indicating he thought that the information showed that Bill was Garcia's real father.

In February 2012, Garcia traveled from California to Michigan for her second visit with Bill. On February 10, 2012, Bill and Garcia went to a local branch of PNC Bank, where Bill added Garcia as a joint owner with rights of survivorship to various accounts. Bill and Garcia then went to the office of attorney Benjamin Bolser; Eunice Ruth Dahn joined Bill and Garcia at Bolser's office. Bill had previously consulted with Bolser and various documents were ready for signature. Geri Garcia, and if unable to serve, Eunice Ruth Dahn, were named as Bill's attorney-in-fact (durable power of attorney); Garcia and Dahn were similarly appointed as Bill's patient advocate (durable power of attorney for health care). Bill executed a last will and testament that (1) disinherited his two children and their children, (2) devised and bequeathed all the residue of his estate to Geri Garcia, and (3) appointed Geri Garcia the personal representative of his estate. Bill also signed a living will that directed the withholding of medical treatment in certain circumstances. Finally, Bill, as the sole surviving settlor-trustee, conveyed the Airport Road property to himself as an individual via a "Lady Bird" quitclaim deed that would pass the property to Geri Garcia if Bill did not otherwise dispose of it during his lifetime.

After February 2012, Garcia accompanied by various members of her family, visited Bill for short periods of no more than 5 days in March, April, August, and October 2012. John Brown continued to disbelieve Garcia's claim of paternity. He wrote to his brother Bill on October 31, 2012, and admonished Bill to not give anyone his cell phone number: "I'm not going to be called and harassed anymore by all those so called kids of mine who read about me and are after my money . . . ." Mark Brown, John's son, became the successor trustee of the Bill and Dena Brown trust after Bill passed away on January 16, 2013.

Mark Brown, as successor trustee, filed an action in circuit court on February 1, 2013 to quiet title in the trust to Airport Road property (Docket No. 322401; LC No. 13-003254-CH). This case requested that the "Lady Bird" deed be declared null and void because it was in contradiction to the terms of trust. Defendant Garcia filed an answer on March 1, 2013, denying that the deed was contrary to the terms of the trust. In later proceedings, plaintiff developed his alternative theory that Garcia used undue influence to cause Bill to execute the deed. This case was assigned to Circuit Judge Michael G. Mack.

On March 8, 2013, Garcia, as Bill's nominated personal representative in his February 10, 2012 will, filed a petition in probate court for formal appointment as personal representative and for determination of heirs (Docket No. 322402; LC-13-007003-DE). Mark Brown appeared by counsel on March 25, 2013. At a hearing held on April 4, 2013 before Probate Judge Benjamin Bolser, the parties stipulated to the entry of an order maintaining the status quo. Judge Bolser, because of his prior involvement as an attorney and witness to the matters in controversy, disqualified himself from hearing the matter. The State Court Administrator assigned this case to Circuit Court Judge Mack. On April 22, 2013, Mark Brown filed a petition contesting probate of the February 10, 2012 will on the basis that it was the product of undue influence and sought instead to probate Bill Brown's June 11, 2008 will. On May 13, 2013, the parties and Judge Mack agreed to consolidate the two actions.

In June 2013, Mark Brown moved for summary disposition pursuant to MCR 2.116(C)(9) and (10), and Geri Garcia responded with her own motion for summary disposition under MCR 2.116(I). Judge Mack held a hearing on the motions on July 15, 2013. The trial court took the motions under advisement and subsequently issued an opinion and order on August 8, 2013, granting in part Garcia's motion and denying Mark Brown's motion. The trial court concluded the terms of the trust authorized Bill Brown as the surviving settlor-trust to execute the "Lady Bird" deed. In particular, the trial court relied on Article VII of the trust, which provided that "[d]uring Settlor's lifetime, however, Settlor may direct Trustee with respect to any matter concerning the . . . distribution . . . of trust assets." Although Article II prohibited the surviving settlor from revoking or amending the trust in any way, the court found persuasive that Article VII powers referred to a singular settlor. Thus, the court ruled that "[w]hen [Bill] Brown executed the Lady Bird deed on February [10], 2012 he was properly acting under the authority granted to him in Article VII. Additionally, Section 7.10 allowed him, as trustee, to 'deal in real property . . . without regard to the duration of such interest.'"

The undue influence claim, however, remained pending, and following further discovery, defendant Geri Garcia moved for summary disposition regarding that claim. After the parties presented oral arguments and further briefing, the trial court issued an opinion and order on May 8, 2014, granting defendant Garcia's motion. The trial court relied primarily on the deposition of bank employee Yvonne Currie, who assisted Bill Brown in making Garcia a joint owner of various accounts, and the testimony of then attorney Benjamin Bolser, who drafted and witnessed the various documents executed at his office on February 10, 2012. The trial court ruled that "all of the testimony supports the conclusion that Bill Brown was acting of his own volition and not subject to any undue influence [and that plaintiff] has presented no evidence to the contrary." The trial court also rejected consideration of a presumption of undue influence because "the evidence has not demonstrated a confidential or fiduciary relationship between Geri Garcia and Bill Brown." The trial court entered an opinion and order denying plaintiff's motion for reconsideration on June 5, 2014. Plaintiff Mark Brown now appeals by right.

## II. THE TRUST

### A. STANDARD OF REVIEW

This Court reviews de novo the trial court's grant or denial of a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under

MCR 2.116(C)(10) tests the factual sufficiency of a claim and must be supported by affidavits, depositions, admissions, or other documentary evidence, the substance or content of which would be admissible at trial. *Id.* at 120-121; *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). The court must view the proffered evidence in the light most favorable to the party opposing the motion. *Maiden*, 461 Mich at 120. A court should grant the motion when the submitted evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). When the undisputed evidence shows that any party is entitled as a matter of law, the court may enter judgment for that party. MCR 2.116(I)(1) and (2); *In re Baldwin Trust*, 480 Mich 915; 739 NW2d 868 (2007).

The interpretation of a trust agreement is also a question of law reviewed de novo on appeal. *In re Herbert Trust*, 303 Mich App 456, 458; 844 NW2d 163 (2013). "A court must ascertain and give effect to the settlor's intent when resolving a dispute concerning the meaning of a trust." *Id*. The settlor's intent is ascertained by looking to the words of the trust itself. *In re Perry Trust*, 299 Mich App 525, 530; 831 NW2d 251 (2013). If the trust's terms are ambiguous, a court may look outside the document to determine the settlor's intent, and consider the circumstances surrounding the creation of the trust and the general rules of construction. *In re Kostin Estate*, 278 Mich App 47, 53; 748 NW2d 583 (2008). The fact that litigants disagree regarding the meaning of a trust, however, does not mean that it is ambiguous. See *Detroit Wabeek Bank & Trust Co v City of Adrian*, 349 Mich 136, 143; 84 NW2d 441 (1957) (noting litigants espousing different positions regarding the proper interpretation of a will did not render its terms ambiguous); *In re Reisman Estate*, 266 Mich App 522, 527; 702 NW2d 658 (2005) ("The rules of construction applicable to wills also apply to the interpretation of trust documents."). A court must also read a trust as a whole, harmonizing and giving effect to all its terms, if at all possible. *In re Raymond Estate*, 483 Mich 48, 52; 764 NW2d 1 (2009). In sum, a court must enforce the plain and unambiguous terms of a trust as they are written. *Id*.; *In re Reisman Estate*, 266 Mich App at 527.

## B. DISCUSSION

The trust's plain terms authorize a settlor serving as trustee to engage in self-dealing and also plainly authorize a settlor to direct the trustee "with respect to any matter concerning the administration, [or] distribution . . . of trust assets." The trust further authorizes the trustee to "[m]ake distribution or division of trust assets in cash or in kind," to "deal in real property, or any interest therein, as Trustee deems appropriate and without regard to the duration of such interests," and to "[e]xecute and deliver an instrument that accomplishes or facilitates the exercise of a power vested in Trustee." Consequently, the trial court correctly ruled that the trust granted Bill Brown as the surviving settlor-trustee the authority under Article VII to execute the February 10, 2012 "Lady Bird" deed quitclaiming the Airport Road property to himself, with a remainder to Geri Garcia. Further, the trial court correctly ruled that the conveyance did not alter or amend any part of the trust. Thus, the trial court properly granted defendant summary disposition regarding plaintiff's action to quiet title with respect to the Airport Road property.

-5-

Plaintiff's arguments to the contrary lack merit. First, plaintiff asserts that the February 10, 2012 quitclaim deed is contrary to the purpose of the trust to distribute the trust's assets to various named beneficiary after the death of both settlors. While plaintiff contends that the quitclaim deed effectively modified or partially revoked the trust, this is simply not true as the trust's terms remain unchanged from the time that Bill Brown and Dena Brown last jointly amended it. While the quitclaim deed clearly diminishes the amount of property subject to distribution according to its terms, the trust itself was not modified. Nevertheless, plaintiff asserts, without citation to any provision in the trust, that "neither Bill Brown nor Dena Brown could unilaterally remove" the Airport Road property from the trust. But plaintiff fails to cite any authority to support his argument that when a married couple establishes an estate plan that includes a trust, the surviving settlor/trustee is precluded from transferring property from the trust even if doing so is within the discretion vested in the settlor or trustee by the terms of the trust document. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims." *In re Temple Marital Trust*, 278 Mich App 122, 139; 748 NW2d 265 (2008). "And, where a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

Plaintiff also posits that because Bill Brown and Dena Brown could have taken title to the Airport Road property as joint tenants with rights of survivorship but instead took title to the property as co-trustees they intended the property to remain in the trust. This argument is unavailing. What the settlors might have, but did not do, does not establish the settlors' intent with respect to the trust. Rather, the plain terms of the trust establish the settlors' intent. *In re Raymond Estate*, 483 Mich at 52; *In re Reisman Estate*, 266 Mich App at 527. As discussed already, the terms of the trust plainly accord the surviving settlor/trustee broad authority to engage in self-dealing, to distribute trust asset in cash or kind, to deal in real estate, and to execute such instruments on such terms as the trustee deems appropriate. The trustee's exercise of these powers that has the effect of diminishing trust assets available for distribution after the death of the last surviving settlor is nowhere prohibited by the terms of the trust. This is not an absurd result, as plaintiff argues, but one the settlors plainly contemplated. Paragraph 4.2 of the trust provides that the trustee may "pay to Settlors or apply for Settlors' benefit amounts of principal (even to the exhaustion of the trust) as Trustee, in Trustee's discretion, deems necessary or advisable to maintain Settlors' customary standard of living." While this provision does not specifically authorize the quitclaim deed at issue, it demonstrates that the trust was first and foremost drafted for the settlors' benefit during their lifetimes. It provides no guarantee that "other" beneficiaries under Article V would receive any distribution after the death of the last surviving settlor.

Moreover, in a similar context of a married couple's estate plan, this Court has rejected imposing restrictions on the surviving spouse's ability to dispose of the couple's property after the death of a spouse unless the estate planning documents specifically impose restrictions. *In re Leix Estate*, 289 Mich App 574, 590-591; 797 NW2d 673 (2010). The *Leix* case concerned an agreement to make mutual wills that would provide on the death of the survivor all of the survivor's property would go into a trust for a granddaughter for her life and on the granddaughter's death, the remainder would be divided into three equal shares for the granddaughter's issue and two other heirs or their issue. *Id*. at 578. After the death of his spouse, the survivor transferred nearly all his assets into accounts held jointly with the

granddaughter and also transferred real estate to himself and the granddaughter as joint tenants with survivorship rights. *Id*. at 576. "One of the effects of the transfers was to divest the trust of assets that the contingent trust beneficiaries might have received upon [the granddaughter's] death." *Id*. at 578. The other heirs brought an action to impose a constructive trust, contending that the survivor's lifetime transfers violated the agreement to execute mutual wills. The trial court granted summary disposition to the granddaughter because "nothing in the agreement put any restrictions on what the surviving party could do with the parties' assets;" therefore, the asset transfers did not breach the agreement. *Id*. at 577.

On appeal, this Court first held that the agreement to execute mutual wills was valid and became binding on the death of the first spouse. *Id*. 578-579, citing *Schondelmayer v Schondelmayer*, 320 Mich 565, 572; 31 NW2d 721 (1948). However, the mutual will agreement did not apply to specific property and did not restrict the survivor's ability to dispose of property during the survivor's lifetime. After surveying conflicting case law from other jurisdictions, the Court rejected the "appellant's invitation to recognize implied limitations on the transfer of assets by the surviving spouse in the case of an agreement to make mutual wills." *In re Leix Estate*, 289 Mich App at 590. The Court reasoned that "[a]n unambiguous contract must be enforced according to its terms." *Id*., quoting *Burkhardt v Bailey*, 260 Mich App 636, 656-657; 680 NW2d 453 (2004). Further, courts must enforce an agreement as written absent an unusual circumstance, such as the contract violating the law or because it is contrary to public policy. *Id*. at 590-591. The *Leix* Court held that these contract principles applied to the contract to make a mutual will. Consequently, the Court held that "[r]egardless of whether the [survivor's asset] transfers were made for the purpose of avoiding the testamentary disposition, the agreement did not restrict [the survivor] from disposing of the assets as he saw fit." *Id*. at 591.

In the present case, nothing in the trust or other testamentary documents restricted the surviving settlor-trustee from disposing of trust assets as the surviving settlor-trustee deemed appropriate. Indeed, the trust specifically authorized Bill, as the surviving settlor-trustee, to engage in self-dealing, to distribute trust assets in cash or kind, to deal in real estate, and to execute any instruments as the trustee considered appropriate to carry out these powers. The trust agreement must be enforced as written. *In re Raymond Estate*, 483 Mich at 52; *In re Leix Estate*, 289 Mich App at 590-591; *In re Reisman Estate*, 266 Mich App at 527. The trial court correctly ruled that defendant Geri Garcia was entitled to summary disposition regarding plaintiff's action to quiet title with respect to the Airport Road property.

## III. THE UNDUE INFLUENCE CLAIM

### A. STANDARD OF REVIEW

This Court reviews de novo the trial court's grant or denial of a motion for summary disposition. *Maiden*, 461 Mich at 118. A trial court properly grants the motion when the submitted evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *In re Leix Estate*, 289 Mich App at 577.

A trial court's ruling on a motion for reconsideration is reviewed for an abuse of discretion, which occurs when the court's decision falls outside the range of principled outcomes. *Yoost v Caspari*, 295 Mich App 209, 219-220; 813 NW2d 783 (2012).

B. DISCUSSION

We affirm the trial court on this issue because plaintiff failed to produce any evidence creating a material question of fact that either the "Lady Bird" deed or the last will and testament were the product of Geri Garcia's undue influence over the free will of Bill Brown. The trial court also correctly ruled that no evidence was presented to establish a confidential or fiduciary relationship between Bill Brown and Geri Garcia so as to invoke the presumption of undue influence with respect to the documents executed on February 10, 2012. Therefore, the trial court properly granted Geri Garcia summary disposition and did not abuse its discretion denying plaintiff's motion for reconsideration.

The party alleging undue influence in the execution of a testamentary instrument must present evidence "that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will." *Kar v Hogan,* 399 Mich 529, 537; 251 NW2d 77 (1976). Proof of motive, opportunity, or even of the ability to control the grantor are not sufficient to establish undue influence in the absence of affirmative proof that it was exercised. *Id.*; *In re Karmey Estate*, 468 Mich 68, 75; 658 NW2d 796 (2003). Plaintiff presented no evidence to the trial court that Geri Garcia exerted undue influence over Bill Brown, and on appeal, plaintiff points to none. Indeed, the affirmative evidence shows that Bill Brown's actions on February 10, 2012, in his individual capacity and as the surviving settlor-trustee of the Bill and Dena Brown trust, were Bill Brown's free and voluntary choice. Further, no evidence was presented that Geri Garcia influenced Bill Brown to create joint bank accounts with her, to execute a new will naming Garcia as his personal representative and beneficiary, to name Garcia his attorney-in-fact for both general purposes and health care decisions, or to execute the "Lady Bird" quitclaim deed at issue.

Because plaintiff bore the ultimate burden of proof and failed to produce any evidence to raise a material question of fact regarding the elements of undue influence, the trial court properly granted summary disposition to defendant Geri Garcia on this claim. *Kar*, 399 Mich at 438 ("The ultimate burden of proof in undue influence cases does not shift; it remains with the plaintiff throughout trial."); *In re Leix Estate*, 289 Mich App at 577 (summary disposition is appropriate if there is no genuine issue of material fact and a party is entitled to judgment as a matter of law). Plaintiff's main assertion of error regarding the trial court's grant of summary disposition is that trial court failed to consider that the circumstances raised a presumption of undue influence because there was evidence of a confidential or fiduciary relationship between Bill Brown and Geri Garcia. This argument is without merit.

A presumption of undue influence exists when evidence establishes (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) that the fiduciary or an interest represented by the fiduciary benefits from a transaction, and (3) that the fiduciary had an opportunity to influence the grantor's decision in the transaction. *Kar*, 399 Mich at 537. Even when the presumption arises, the ultimate burden of proving undue influence remains on the party alleging that it occurred. *Id.* at 538. But the presumption satisfies the burden of persuasion, so if a party opposing the allegation of undue influence "fails to offer sufficient rebuttal evidence," then the party alleging undue influence will have met its burden of persuasion, i.e., its burden of showing the occurrence of undue influence. *Id.* at 542. Generally,

the fact finder must assess whether sufficient evidence has been presented to rebut a presumption of undue influence. *In re Peterson Estate*, 193 Mich App 257, 262; 483 NW2d 624 (1992).

Plaintiff points to no evidence of a confidential or fiduciary relationship between Bill Brown and Geri Garcia that existed before the execution of the questioned documents. Instead, plaintiff asserts a bootstrap argument that conflates the fact that the grant of a power of attorney will create a fiduciary relationship, citing *In re Susser Estate*, 254 Mich App 232, 236; 657 NW2d 147 (2002), with the general evidentiary principle that subsequent acts may be circumstantial evidence regarding earlier events, citing *In re Persons Estate*, 346 Mich 517, 532; 78 NW2d 235 (1956) and *Walts v Walts*, 127 Mich 607, 610; 86 NW 1030 (1901). Plaintiff contends that Bill Brown's creating a fiduciary relationship is sufficient to raise a question of fact regarding undue influence as to the execution of contemporaneous or prior documents. This argument fails, as discussed below.

First, plaintiff cites no authority for the premise of his argument that the creation of fiduciary relationship retroactively extends a presumption of undue influence to acts that took place before the fiduciary relationship was created. Moreover, the cases plaintiff cites do not so hold. *Persons Estate*, 346 Mich at 532, holds only that the conduct of the chief beneficiary of a will before or after the will's execution may be relevant to whether undue influence was exerted in procuring the making of the will. The case says nothing about a presumption of undue influence applying retroactively to times before the creation of a fiduciary relationship. Similarly, *Walts* states the unremarkable evidentiary principle that subsequent events may be circumstantially relevant evidence to explain earlier conduct. Thus, the evidence relates to prove a fact in existence at an earlier time. Specifically, the Court stated that "evidence showing acts of undue influence at a date subsequent to the execution of the will is competent, in connection with other facts and circumstances, in support of the charge of undue influence exerted at the earlier date." *Walts*, 127 Mich at 610. This case also does not hold that a presumption of undue influence may be applied retroactively to times before the creation of a fiduciary relationship. An issue is deemed abandoned where a party fails to cite any supporting legal authority for its position. *Prince*, 237 Mich App at 197.

Second, our Supreme Court, in discussing the elements necessary to establish a presumption of undue influence clearly states that for the presumption to be "brought to life," i.e., to apply, evidence must be introduced that would establish "the existence of a confidential or fiduciary relationship between the grantor and a fiduciary . . . ." *Kar*, 399 Mich at 537. Stated otherwise, the presumption of undue influence cannot be applied to questioned documents that were created before "the existence of a confidential or fiduciary relationship." Thus, the creation of a fiduciary relationship cannot shift the burden of persuasion with respect to undue influence that is alleged to have been exerted before the fiduciary relationship was created. Because the burden of production never shifted in this case from plaintiff to defendant with respect to the questioned documents, and plaintiff failed to present evidence to create a question of fact as to whether the questioned documents were the product of undue influence, the trial court properly granted defendant summary disposition. *Id.* at 539-540; *In re Leix Estate*, 289 Mich App at 577.

Even if we were to assume that a presumption of undue influence arising from the creation of the power of attorney could be applied retroactively, we recognize that the presumption creates only a permissible inference that may be rebutted by the introduction of

evidence to the contrary. *Kar,* 399 Mich at 541. The ultimate burden of proof regarding undue influence remains with the party who alleges that it occurred. *Id.* at 539. In the present case, no evidence was presented of undue influence and, in fact, the evidence showed that Bill Brown's actions were the result his own free will. So, even if a presumption of undue influence applied retroactively stemming from the creation of a power of attorney in Geri Garcia, the presumption was rebutted such that a reasonable trier of fact could only conclude that the questioned documents were not the product of undue influence. They were the result of Bill Brown's free will. See, e.g., *Id.* at 537, 541, 543-544 (a directed verdict is appropriate when a defendant's rebuttal evidence overcomes the presumption).[3] Therefore, based on the evidence submitted to the trial court, even if a presumption of undue influence existed at the time the question documents were created, the evidence presented to the trial court, giving the benefit of reasonable doubt to plaintiff, does not leave open a question of undue influence on which reasonable minds might differ. *Id.* at 543-544; *West,* 469 Mich at 183.

Plaintiff also argues that the trial court erred in granting summary disposition to defendant regarding undue influence because it relied on "conclusory opinion" testimony of then attorney Benjamin Bolser and bank employee Yvonne Currie. Both witnesses testified in their depositions that they believed Bill Brown was acting of his own volition when executing the questioned documents and that they saw nothing to indicate otherwise. A trial court may only consider documentary evidence on a motion for summary disposition under MCR 2.116(C)(10), "to the extent that the content or substance would be admissible as evidence." MCR 2.116(G)(6); see also *Maiden,* 461 Mich at 121. Plaintiff's argument in this regard lacks merit. To the extent Bolser's and Currie's testimony amounted to lay opinions, it would be substantively admissible because it was "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701. "Any witness is qualified to testify as to his or her physical observations and opinions formed as a result of them." *Lamson v Martin (After Remand),* 216 Mich App 452, 459; 549 NW2d 878 (1996).

In sum, the trial court properly granted defendant Geri Garcia summary disposition regarding plaintiff's claim of undue influence with respect to the questioned documents. *In re Leix Estate,* 289 Mich App at 577. Furthermore, the trial court also did not abuse its discretion denying plaintiff's motion for reconsideration. *Yoost,* 295 Mich App at 219-220.

---

[3] The standard applicable to directed verdicts is the same as that for a motion under MCR 2.116(C)(10), i.e., "whether reasonable minds, taking the evidence in a light most favorable to the nonmovant, could reach different conclusions regarding a material fact." *Skinner v Square D Co,* 445 Mich 153, 165 n 9; 516 NW2d 475 (1994), overruled in part on other grounds *Smith v Globe Life Ins Co,* 460 Mich 446, 455 n 2; 597 NW2d 28 (1999).

We affirm.  As the prevailing party, defendant may tax costs pursuant to MCR 7.219.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan