*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LTC PAMELA JOY LEE JOHNSON, D.O.,

Plaintiff-Appellant,

v

EDGAR JOHNSON, III,

Defendant-Appellee.

FOR PUBLICATION
July 18, 2019
9:00 a.m.

No. 345803; 345955
Clinton Circuit Court
Family Division
LC No. 2010-022282-DM

Before: M. J. KELLY, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

These consolidated cases[1] involve postjudgment proceedings following the parties' 2011 divorce. In Docket No. 345955, plaintiff-mother, Lieutenant Colonel Pamela Joy Lee Johnson, D.O., appeals by leave granted[2] the trial court's April 2018 order denying her request for an adjournment under the Servicemembers Civil Relief Act (SCRA), 50 USC 3901 *et seq*. The April 2018 order also held plaintiff in contempt, issued a bench warrant for her arrest with a cash bond of $15,000, and required her to pay $1,500 to defendant-father, Edgar Johnson, III. In Docket No. 345803, plaintiff appeals by right the trial court's September 2018 order increasing her bench warrant bond to $25,000, suspending her driver's license and any occupational license, and awarding defendant temporary physical placement of the minor children. For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS

---

[1] *Johnson v Johnson*, unpublished order of the Court of Appeals, entered January 24, 2019 (Docket No. 345955).

[2] *Johnson v Johnson*, unpublished order of the Court of Appeals, entered January 24, 2019 (Docket No. 345955).

The parties divorced in 2011. Their divorce judgment awarded the parties joint legal custody of the minor children and awarded plaintiff primary physical custody. In 2016, plaintiff moved for a change of domicile to Springfield, Virginia, because she was called for active duty as a medical review officer in the United States Army. In January 2017, the trial court allowed the move, and entered a detailed parenting-time order.[3] Relevant to this appeal, defendant asserts that between January 11, 2017 and May 21, 2018, plaintiff failed to facilitate Skype parenting-time sessions between defendant and the children, to provide the minor children to him for Thanksgiving break, to provide the children to him for Christmas break, to provide the children for defendant's summer parenting time, and to provide him with medical information regarding the children or information about their wellbeing. On multiple occasions, the Friend of the Court (FOC) petitioned the court to issue an order to show cause for why plaintiff should not be held in contempt for violating the parenting-time schedule.

Plaintiff failed to appear for a show cause hearing scheduled for March 20, 2017, and the hearing was changed to May 1, 2017. Plaintiff did not appear for the May 1, 2017 hearing. Instead, on April 27, 2017, she submitted a letter to the court stating that starting on April 28, 2017 she was "on active duty military orders assigned to the U.S. Army Physical Disability Agency (USAPDA) and serving at the National Capital Region (NCR)—Physical Evaluation Board (PEB) in Crystal City, Arlington, Virginia." She explained:

> The USAPDA is charged with evaluating physical disability cases of Soldiers. The NCR-PEB is one of three U.S. Army Physical Evaluation Boards. Cases pertain to both active duty and reserve component Soldiers. Our work load has dramatically increased due to the Global War on Terrorism and remains consistently high. My duties are directly related to processing Soldier disability cases which are very time-sensitive. Delays in case proceeding have a significantly detrimental effect on not only on Army readiness but also the Soldiers and their families.
>
> Accordingly, I most respectfully request that I be afforded the rights and protection offered under the [SCRA], as my military duties preclude proper representation in the court. Current required training for my new position minimally requires ninety days of uninterrupted training for mission success. Any delays or interruptions in training will adversely impact Soldier and military readiness.

Plaintiff submitted a copy of her orders, which confirmed that she was on active duty starting April 28, 2017. Without explanation, the trial court entered an order adjourning the show cause hearing to June 5, 2017 and ordering plaintiff to appear telephonically. Plaintiff did not to appear for the June 5, 2017 show cause hearing.

---

[3] Plaintiff appealed the portion of the January 2017 order setting forth the parenting-time schedule. This Court affirmed the trial court. *Johnson v Johnson*, unpublished per curiam opinion of the Court of Appeals, entered August 8, 2017 (Docket No. 336827).

Another show cause hearing was scheduled for February 5, 2018. On January 10, 2018, approximately one month before the scheduled hearing, the FOC investigator/mediator sent plaintiff's commanding officer a letter explaining that plaintiff was required to appear for the February 5, 2018 hearing and requesting that plaintiff be made available. The February 5, 2018 show cause hearing was rescheduled for April 16, 2018, and the FOC investigator/mediator advised plaintiff's commanding officer of the change in date and again requested that plaintiff appear.

On April 5, 2018, plaintiff submitted another letter to the trial court, once again seeking a stay of the proceeding under the SCRA. The letter explained that plaintiff was on active duty, described the nature and importance of her duties, explained that plaintiff's commanding officer supported the request, stated that plaintiff's military duties precluded her participation in the court proceedings, and added that military leave was not authorized at the time of the letter. It also provided an "anticipated possible date of availability" for participation in any hearings away from plaintiff's duty station. Plaintiff's commanding officer signed the letter.

At the April 16, 2018 show cause hearing, the trial court held that plaintiff's letter did not satisfy the conditions for a mandatory stay of the proceedings under 50 USC 3932(b)(2). Accordingly, it denied plaintiff's request for a stay. Furthermore, the court held plaintiff in contempt of court for failing to appear as directed and the court issued a bench warrant with a $15,000 cash bond. The court also ordered plaintiff to pay defendant $1,500 by May 15, 2018 based on the fact that he had appeared at three scheduled hearings that plaintiff had not attended.

Another show cause hearing was scheduled for July 16, 2018, but it was never held. Instead, another show cause petition was filed by the FOC, alleging additional violations of the parenting-time schedule and requesting a show cause hearing on why plaintiff should not be held in contempt for her refusal to abide by the parenting-time schedule. A hearing was scheduled for September 17, 2018. Plaintiff made no formal request for a stay of the hearing under SCRA. At the hearing, however, her lawyer requested permission from the court to make "a proper application" under the SCRA. The court did not permit it. Following the hearing, the court entered an order increasing plaintiff's bench warrant bond to $25,000 for her failure to appear on September 17, 2018. The court also ordered that plaintiff transfer the minor children to defendant by noon on September 21, 2018, and it directed that defendant shall have temporary physical placement of the minor children. The court also suspended plaintiff's driver's license and any occupational licenses that she held.

## II. RELIEF UNDER THE SCRA

### A. STANDARD OF REVIEW

Plaintiff argues that the trial court erred by denying her request for a stay under the SCRA. Questions of statutory interpretation, construction, and application are reviewed de novo. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). This standard also applies to the interpretation of federal statutes. *In re LFOC*, 319 Mich App 476, 480; 901 NW2d 906 (2017). This Court reviews for an abuse of discretion the trial court's decision whether to adjourn or continue a proceeding. *In re King*, 186 Mich App 458, 466; 465 NW2d 1 (1990).

B.  ANALYSIS

1.  APPLICATION FOR A STAY

Resolution of the issues raised on appeal requires interpretation of the SCRA, which is a federal statute.  In *Hegadorn v Dep't of Human Servs Dir*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 156132, 156333, 156334), slip op at 9, our Supreme Court explained:

> "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute."  *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018).  When interpreting federal statutes, we strive to "give effect to the will of Congress[.]" *Walters*[ *v Nadell*], 481 Mich [377,] 381[; 751 NW2d 431 (2008)] (quotation marks and citations omitted.)

Ascertaining legislative intent is accomplished "by giving the words selected by the [Congress] their plain and ordinary meanings, and by enforcing the statute as written." *Griffin v Griffin*, 323 Mich App 110, 120; 916 NW2d 292 (2018) (quotation marks and citation omitted).  This Court may not read something into the statute "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." ). *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584 (2018) (quotation marks and citation omitted).  Moreover, like its predecessor, the Soldiers' and Sailors' Civil Relief Act, 50 USC 501 *et seq.*, the SCRA "is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation."  See *Boone v Lightner*, 319 US 561, 575; 63 S Ct 1223; 87 L Ed 1587 (1943).[4]

The SCRA provides protection to United States service members, so that they may "devote their entire energy to the defense needs of the Nation," by providing "temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service."  50 USC 3902(1) and (2).  The SCRA provides that a servicemember, who "is in military service . . ." and who "has received notice" of "any civil action or proceeding, including any child custody proceeding," may apply for a stay of the action "for a period of not less than 90 days."  50 USC 3932(a) and (b)(1).[5]  In order to apply for a stay, the servicemember must provide the court with the following:

---

[4] The Soldiers' and Sailors' Civil Relief Act of 1940 was replaced by the SCRA in 2004.  See PL 108-189, § 1; 117 Stat 2835.

[5] In her brief on appeal, plaintiff relies on both § 3932 and § 3931 of the SCRA.  However, § 3931(a) only applies to a civil action or proceeding (including child custody proceedings) "in which the defendant does not make an appearance."  50 USC 3931(a).  Here, as defendant made an appearance (and as he is not a servicemember), § 3931 clearly does not apply.  Instead, § 3932 applies because at the time plaintiff filed her application for a stay she was "in military service" and had "received notice" of the proceedings.  See 50 USC 3932(a).  Accordingly, to

     (A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear.

     (B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter. [50 USC 3932(b)(2).]

If the conditions in 50 USC 3932(b)(2) are satisfied, a stay of the action "for a period of not less than 90 days" is mandatory. See 50 USC 3932(b)(1) (stating that upon application by the servicemember and if the conditions in § 3932(b)(2) are met, the court "shall . . . stay the action for a period of not less than 90 days . . .").[6]

In this case, plaintiff sought to invoke the protections of the SCRA on a number of occasions.[7] Relevant to this appeal, plaintiff was ordered to appear in person on April 16, 2018

---

the extent that plaintiff's arguments on appeal rely on an interpretation of § 3931, her arguments lack merit. Specifically, to the extent that plaintiff suggests the trial court erred by failing to appoint a lawyer under § 3931(b)(2), we find plaintiff's argument without merit. Section 3931 is wholly inapplicable to plaintiff's case.

[6] If a servicemember is granted a stay under 50 USC 3932(b), he or she "may apply for an additional stay based on continuing material affect of military duty on the servicemember's ability to appear." 50 USC 3932(d)(1). The application can be made either at the time of the initial application under § 3932(b) "or when it appears that the servicemember is unavailable to prosecute or defend the action." 50 USC 3932(d). In order to receive an additional stay, the servicemember must satisfy the conditions in 50 USC 3932(b)(2). Unlike the stay under § 3932(b), an additional stay under § 3932(d) is not mandatory; however, "[i]f the court refuses to grant an additional stay of proceedings . . . the court shall appoint counsel to represent the servicemember in the action or proceeding." 50 USC 3932(d)(2).

[7] On December 19, 2016, plaintiff, through her lawyer, submitted a letter to the court indicating that plaintiff was seeking to invoke the SCRA. Based on the December 19, 2016 letter, at that time plaintiff did not seek a stay of the court scheduled court proceedings. Instead, she sought to invoke it "regarding the Court's requirement that she appear in person for the Show Cause hearing." Plaintiff authorized her lawyer to appear on her behalf, however. At the hearing, the trial court expressly found that plaintiff had not properly invoked the protections of the SCRA, noting that "there certainly are actions that service person must undertake in order for the service person to request relief under S-C-R-A." The court added that the information required to invoke the SCRA needed to be conveyed by both the plaintiff and the plaintiff's commanding officer, which had not been done. Accordingly, the court declined to grant relief under the SCRA. Plaintiff does not challenge that decision.

for a show cause hearing on her alleged failure to comply with the parenting-time schedule. In response, on April 5, 2018, plaintiff submitted a letter signed by herself and by her commanding officer. The letter provided that she was "on active duty military orders assigned to the U.S. Army Physical Disability Agency (USAPDA) and serving at the National Capital Region (NCR)—Physical Evaluation Board (PEB) in Crystal City, Arlington, Virginia." She explained:

> The USAPDA is charged with evaluating physical disability cases of Soldiers. The NCR-PEB is one of three U.S. Army Physical Evaluation Boards. Cases pertain to both active duty and reserve component Soldiers. Our work load has dramatically increased due to the continued Global War on Terrorism and remains consistently high. My duties are directly related to processing Soldier disability cases which are very time-sensitive. Delays in case processing have a significantly detrimental effect on [sic] not only on Army readiness but also the Soldiers and their families.

> Accordingly, I most respectfully request that I be afforded the rights and protection offered under the [SCRA] as my military duties preclude proper representation in the court. Additionally, my Commander further supports this request, as witnessed by her signature below. Military leave is not authorized at the time of this letter.

> An anticipated possible date of availability, telephonically only, for participation in any Hearings away from the duty station is 05 September 2018.

On appeal, plaintiff contends that the trial court erred by not staying the proceedings under the SCRA. The trial court stated that in order to satisfy the conditions in 50 USC 3932(b)(2), plaintiff had to submit two separate documents: one from herself and one from her commanding officer. The trial court erred in its interpretation of the § 3932(b). The statute requires that four pieces of information be provided. First, in a "letter or other communication" there must be a factual statement "stating the manner in which current military duty requirements materially affect the servicemember's ability to appear." 50 USC 3932(b)(2)(A). Second, in a letter or other communication there must be a statement "stating a date when the servicemember will be available to appear." 50 USC 3932(b)(2)(A). Third, in a letter or other communication

---

On April 27, 2017, plaintiff submitted a letter to the court seeking a stay under the SCRA. Plaintiff also submitted a copy of her orders, which confirmed that she was on active duty starting April 28, 2017. However, plaintiff's April 27, 2017 application did not satisfy the conditions under 50 USC 3932(b)(2)(B) because there was not a "letter or other communication" from plaintiff's commanding officer "stating that the servicemember's current military duty prevents appearance and [stating] that leave is not authorized for the servicemember at the time of the letter." Despite the apparent deficiency in the application, the trial court granted plaintiff a stay of the contempt proceedings. The court's order adjourned the hearing from May 1, 2017 until June 5, 2017, i.e., for a 35 day period. Plaintiff did not appear as directed, but no order was entered against her at that time.

*from* the servicemember's commanding officer, there must be a statement "that the servicemembers' current military duty prevents appearance." 50 USC 3932(b)(2)(B). Fourth, and finally, in a letter or other communication *from* the servicemember's commanding officer, there must be a statement providing "that military leave is not authorized for the servicemember at the time of the letter." 50 USC 3932(b)(2)(B). Neither the first nor the second conditions set forth in the statute require that a certain person make the required statements. Thus, under a liberal construction of the statute, the first and second conditions can be satisfied by statements made by the servicemember, the servicemember's commanding officer, or some other person. In addition, although the third and fourth conditions, set forth in § 3932(b)(2)(B), expressly state that they must be "from" the servicemember's commanding officer in the form of a letter or other communication, nothing in the statutory language precludes the servicemember's commanding officer from making those statements in a letter authored by the servicemember and adopted by the servicemember's commanding officer. Accordingly, construing the statute liberally, it is plain that so long as the servicemember's commanding officer makes the statements required in § 3932(b)(2)(B), only one document need be submitted. Therefore, the trial court erred when it interpreted the statute as requiring two separate letters.

The trial court, however, also held that the content of the letter was insufficient to satisfy the conditions set forth in 50 USC 3932(b)(2). Contrary to 50 USC 3932(b)(2)(A), plaintiff failed to set forth facts stating the manner in which her current military duty *materially affected* her ability to appear for the show cause hearing. Plaintiff only stated, in general terms, that the work load of the NCR-PEB was "dramatically increased due to the Global War on Terrorism and remains consistently high." With regard to her specific duties, she explained that they were "directly related to processing Soldier disability cases which are very time-sensitive," but she offered no explanation for why or how her duties materially affected her ability to appear for the contempt proceedings. As a result, plaintiff's letter did not satisfy the first condition in § 3932(b)(2)(A). See *Fazio v Fazio*, 91 Mass App 82, 86; 71 NE3d 157 (2017) (holding that the plaintiff's letter was insufficient to mandate a stay under § 3932(b)(2) because the letter submitted "did not explain how the requirements of the training mission prevented the husband from taking part of one day to attend a court hearing.").[8]

In addition, plaintiff failed to state "a date when the servicemember will be available to appear." Instead, she explained in her letter that "[a]n anticipated possible date of availability, telephonically only, for participation in any Hearings away from the duty station is 05 September 2018." Because 50 USC 3932(b)(2)(A) expressly requires that the application for a stay include a date when the servicemember *will* be available to appear, plaintiff's statement providing only an anticipated and possible date to appear—telephonically only—is not sufficient to meet the condition set forth in 50 USC 3932(b)(2)(A).[9] See *In re Marriage of Herridge*, 169 Wash App

_____

[8] Decisions from other states are not binding on this Court, but they can be considered persuasive. *Holton v Ward*, 303 Mich App 718, 727 n 11; 847 NW2d 1 (2014).

[9] Plaintiff's letter does contain a statement from her commanding officer that military leave is not authorized at the time of this letter and that plaintiff's military duties preclude her appearance

290, 301; 279 P3d 956 (2012) (holding that the appellant failed to meet the requirements of SCRA because, although he stated that he would be deployed overseas from November 2009 until June 2010, he "did not state a time at which he would again be available to appear."). Because the statutory conditions in 50 USC 3932(b)(2)(A) were not met, we detect no error in the trial court's denial of the stay.

The trial court's denial of a stay under 50 USC 3932(b)(2) is affirmed.

## 2. OTHER ARGUMENTS

Plaintiff offers a tangential argument that the trial court's bias against her caused it to rule against her with respect to the SCRA.[10] Plaintiff did not raise the issue of bias in the trial court. Arguments raised for the first time on appeal are unpreserved and "not ordinarily subject to review." *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993) (opinion by BOYLE, J). Furthermore, plaintiff completely fails to develop her argument or cite applicable law. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *Bill and Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (quotation marks and citation omitted). When "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Id*. (quotation marks and citation omitted). See also *Magee v Magee*, 218 Mich App 158, 161; 553 NW2d 363 (1996) ("A party may not leave it to this Court to search for authority to sustain or reject its position."). Therefore, this argument is abandoned and should not be considered on appeal.

Next, plaintiff claims that defendant made false statements at the September 2018 hearing when he stated that he had not physically seen the children since July 2016 and had not had Skype contact since October 2016. In support, plaintiff cites what appears to be a portion of the

---

in court. Accordingly, the conditions set forth in 50 USC 3932(b)(2)(B) were met by plaintiff's letter.

[10] The court made several statements that, at first glance, appear to show bias against plaintiff. For instance, the court stated that it was "candidly very displeased" with plaintiff, noting that it had "bent over backwards to ensure" that it did not violate the SCRA. The court then expressed that "this entire last year has been nothing but a manipulation," with defendant being deprived of ordered parenting time with his children and plaintiff ignoring all orders to show cause as to why she should not be held in contempt. Yet, the court's concerns appear to be well placed. Plaintiff sought to change the children's domicile in June 2016. At the hearing on her motion, plaintiff testified that she was being ordered to "active duty" as of July 2016. At that time, she testified that she would be able to set her own work hours. She explained that she would only have to go to the office one day a week and that she would be able to telework the remaining days. It is not clear whether plaintiff's duties were drastically altered between June 2016 and April 2018 when she sought a stay under the SCRA. Given plaintiff's testimony in 2016, it is clear that the trial court had a basis to feel that plaintiff was manipulating the situation and was not genuinely precluded from appearing at the show-cause hearings based on her military duties.

United States Code, but she does not provide a complete citation, she fails to show why federal law applies, and she fails to apply this law to the statements that defendant made. Without explanation or substantive analysis, she merely recites defendant's statements and claims that they were false. She also claims that defendant has been inconsistent with sending pension checks, another argument that she did not raise in the trial court or sufficiently brief on appeal. It is therefore abandoned. See *Bill and Dena Brown Trust*, 312 Mich App at 695.

Plaintiff also suggests that the trial court erred by ordering her to pay $1,500 to defendant, but she does not identify the nature of the court's error such that this Court can meaningfully analyze her claim. Plaintiff only briefly references the SCRA, but provides no substantive analysis in support of her claim. As a result, this claim is abandoned. See *id*.

Finally, plaintiff also argues that the trial court's orders "were entered without proper procedural application of the SCRA in its entirety." In support, she quotes several sections of the SCRA, but she offers no explanation for how or why the sections are applicable. Therefore, we deem those arguments abandoned as well. See *id*.[11]

### III. TEMPORARY CHANGE OF CUSTODY

---

[11] Specifically, we conclude that plaintiff abandoned her arguments as they pertain to the following sections of the SCRA:

(1) 50 USC 3933, which applies only if "an action for compliance with the terms of a contract is stayed . . ." 50 USC 3933(a);

(2) 50 USC 3934, which grants a court discretion to "stay the execution of any judgment or order entered against the servicemember" and "vacate or stay an attachment or garnishment of property, money, or debts in the possession of the servicemember or a third party," if, "in the opinion of the court," the servicemember "is materially affected by reason of military service" from complying with a court judgment or order;

(3) 50 USC 3936, which provides, generally, that "the period of a servicemember's military service" may not be included in an applicable statute of limitations;

(4) 50 USC 4041, which permits the Attorney General to commence a civil action against any person who "engages in a pattern or practice of violating this chapter" or "engages in a violation of this chapter that raises an issue of public importance;"

(5) 50 USC 4042, which permits a person aggrieved by a violation of the SCRA to file a civil action to obtain relief; and

(6) 50 USC 4043, which provides that nothing in § 4041 or § 4042 "shall be construed to preclude or limit any remedy otherwise available under law, including consequential and punitive damages."

## A. STANDARD OF REVIEW

Plaintiff next argues that the trial court abused its discretion by granting defendant temporary physical custody of the children without adequate consideration of the statutory best-interest factors. This Court reviews custody decisions for an abuse of discretion. *Vodvarka v Grasmeyer*, 259 Mich App 499, 507-508; 675 NW2d 847 (2003). "Questions of law are reviewed for clear legal error." *Id*. at 508 (citation and quotation marks omitted). Clear error occurs when the trial court "incorrectly chooses, interprets, or applies the law." *Id*. (citation and quotation marks omitted).

## B. ANALYSIS

"An evidentiary hearing is mandated before custody can be modified, *even on a temporary basis*." *Grew v Knox*, 265 Mich App 333, 336; 694 NW2d 772 (2005) (emphasis added); see also MCR 3.207(C)(2). Regardless of whether a court is establishing custody in an original matter or altering a prior custody order, the trial court must determine if the change of custody is in the children's best interests and, to that end, must make specific findings of fact regarding each of the 12 statutory best-interest factors. *Grew*, 265 Mich App at 337.

Here, the trial court's September 18, 2018 order awarded defendant temporary physical custody of the children. Although the order gave defendant only "temporary physical placement," there is no meaningful distinction between placement and custody, and an evidentiary hearing was therefore required. See *id*. at 336. The trial court did not hold an evidentiary hearing. Furthermore, the trial court did not determine if there was proper cause or a change of circumstances, or if an established custodial environment existed, and it did not evaluate the 12 best-interest factors. The trial court, under *Grew*, clearly erred. Yet, although the September 18, 2018 order does not use the term "ex parte," the trial court may have granted temporary custody to defendant based on MCR 3.207(B), which provides:

> Pending the entry of a temporary order, the court may enter an ex parte order if the court is satisfied by specific facts set forth in an affidavit or verified pleading that irreparable injury, loss, or damage will result from the delay required to effect notice, or that notice itself will precipitate adverse action before an order can be issued. [MCR 3.207(B)(1).]

This rule has been applied to child custody proceedings. See *Mann v Mann*, 190 Mich App 526, 533; 476 NW2d 439 (1991). Before making an ex parte decision on child custody, the trial court must consider "facts established by admissible evidence—whether by affidavits, live testimony, documents, or otherwise." *Id*. Here, the trial court found—on the basis of what appears to be admissible evidence—"that it is irreparable harm . . . to these children to have been deprived any contact with their father since 2016, and that mother's blatant disregard for the law justifies an immediate placement of [E] and [S] with their father."

However, this Court has stated that

> the trial court should [not] be allowed to circumvent and frustrate the purpose of the law by issuing an ex parte order changing custody *without any notice to the custodial parent* or a hearing on the issue whether clear and convincing evidence

-10-

was presented that a change of custody was in the child's best interest. [*Pluta v Pluta*, 165 Mich App 55, 60; 418 NW2d 400 (1987) (emphasis added).]

Accordingly, ex parte orders issued under MCR 3.207 that affect child custody must comply with specific notice requirements. Under MCR 3.207(B)(5),

[a]n ex parte order providing for child support, custody, or visitation pursuant to MCL 722.27a, must include the following notice:

"NOTICE:

"1. You may file a written objection to this order or a motion to modify or rescind this order. You must file the written objection or motion with the clerk of the court within 14 days after you were served with this order. You must serve a true copy of the objection or motion on the friend of the court and the party who obtained the order.

"2. If you file a written objection, the friend of the court must try to resolve the dispute. If the friend of the court cannot resolve the dispute and if you wish to bring the matter before the court without the assistance of counsel, the friend of the court must provide you with form pleadings and written instructions and must schedule a hearing with the court.

"3. The ex parte order will automatically become a temporary order if you do not file a written objection or motion to modify or rescind the ex parte order and a request for a hearing. Even if an objection is filed, the ex parte order will remain in effect and must be obeyed unless changed by a later court order."

Further, MCR 3.207(B)(6) provides:

In all other cases, the ex parte order must state that it will automatically become a temporary order if the other party does not file a written objection or motion to modify or rescind the ex parte order and a request for a hearing. The written objection or motion and the request for a hearing must be filed with the clerk of the court, and a true copy provided to the friend of the court and the other party, within 14 days after the order is served.

These notice requirements were not complied with in the September 18, 2018 order. The detailed notice format described in MCR 3.207(B)(5) is absent, and the order does not state that it will automatically become a temporary order unless plaintiff takes the required steps. Therefore, even if the ex parte order was supported by admissible evidence, it nonetheless failed to comply with the notice requirements under MCR 3.207(B)(5) and (6).

Furthermore, an ex parte order becomes a temporary order if no objection is made, see MCR 3.207(B)(5) and (6), and, as previously discussed, even temporary changes in custody require an evidentiary hearing at some point. See *Grew*, 265 Mich App at 333; *Pluta*, 165 Mich App at 60 (requiring an eventual hearing on the children's best interests even for ex parte orders). Therefore, even assuming that the initial ex parte order was valid and complied with the

-11-

notice requirements, the trial court was still required to hold an evidentiary hearing in the future and consider the children's best interests. The failure to do so was clear error and plain error.

## V. CONCLUSION

The trial court did not err in its application of the SCRA, in its denial of plaintiff's request to stay proceedings, or in not appointing a lawyer for plaintiff at the April 2018 hearing. However, the trial court abused its discretion in modifying custody because it did not hold an evidentiary hearing, make the necessary determinations, or provide the required notice. Accordingly, we reverse the portion of the trial court's September 2018 order awarding defendant temporary placement of the children and remand for further proceedings consistent with this opinion.[12]

Affirmed in part, reversed in part, and remanded for further proceedings. No taxable costs are awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher

---

[12] Nothing in this opinion should be construed as prohibiting plaintiff from applying for a stay of the proceedings based on her military service under § 3932(b). In evaluating her request, the trial court should remain mindful that the SCRA is to be liberally construed.