*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* G. M. KALANQUIN, Minor.

UNPUBLISHED
September 14, 2023

No. 365092
St. Clair Circuit Court
Family Division
LC No. 22-000177-NA

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to GK pursuant to MCL 712A.19b(3)(e) (failure to comply with a court-structured guardianship plan), (f) (failure to support or assist, and visit, contact, or communicate with child for two or more years), and (g) (failure to provide proper care and custody). We affirm.

Petitioner filed an amended petition seeking termination of respondent's parental rights that alleged respondent had not been in contact with GK since September 2019, when GK's aunt became GK's guardian. The last time respondent contacted GK's aunt was in October 2020. The amended petition alleged termination of respondent's parental rights was appropriate because respondent failed to comply with a court-structured plan or provide regular and substantial support for GK during the prior two years, despite having the means with which to do so.

On December 24, 2018, respondent called GK's aunt to come pick up GK because respondent needed to check herself into a facility for substance abuse treatment. GK's aunt described the neighborhood respondent was in with GK as "scary" and "dangerous." When GK's aunt arrived, respondent appeared to be under the influence of heroin, and only handed GK's aunt a small bag of items for GK, most of which belonged to GK's brothers, who were both staying with other relatives at the time. The only time respondent visited GK after she went to live with GK's aunt was in March 2019, but respondent appeared to still be using drugs at the time, so GK's aunt did not offer any more visits with respondent. In September 2019, GK's aunt filed to become GK's guardian, and began collecting social security payments GK was supposed to receive because of the passing of her father. Respondent had been collecting those payments for 10 months without ever distributing them to GK's aunt or using them to buy GK necessaries. Respondent called GK's aunt a couple times around the holidays during the first two years, but each time her communication with GK's aunt was vulgar, inappropriate, and threatening to GK. When GK's

aunt filed to become the recipient of GK's social security payments, respondent threatened to steal GK in the middle of the night and disappear.

In the fall of 2019, respondent was given a court-structured plan she was required to comply with in order to achieve reunification. The plan required respondent to complete two random drug screens per week, obtain and maintain stable housing and income, provide proof of substance abuse assessment and treatment, and follow the treatment recommendations. Respondent never complied with the plan. Respondent also never contacted or visited GK after March 2019. GK was doing well in her placement with her aunt. The bond GK had with respondent quickly dissipated, and she began to call her aunt her mother. GK also bonded with her aunt's 15-month-old son. GK was thriving in her placement with her aunt, and was involved in extra-school activities.

In light of the foregoing, the trial court assumed jurisdiction over GK pursuant to MCL 712A.2(b)(5) and (6), found statutory grounds existed to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(e), (f), and (g), and found it was in GK's best interests to terminate respondent's parental rights.

## I. JURISDICTION

On appeal, respondent argues that the trial court clearly erred by taking jurisdiction because the court-structured plan failed to allow for visitation between respondent and GK, the trial court failed to make a finding that respondent was financially able to support and provide for GK, and the trial court's suspension of respondent's visitation time was the cause of respondent's failure to communicate with or visit GK.

We review a trial court's decision to exercise jurisdiction for clear error, in light of the trial court's factual findings. *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. (quotation marks and citation omitted). "To acquire jurisdiction, the factfinder must determine by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2." *Id*. (quotation marks and citation omitted).

After a petition is authorized, the trial court must hold an adjudicative hearing to determine "whether the trial court can exercise jurisdiction over the child (and the respondents-parents) under MCL 712A.2(b) so that it can enter dispositional orders, including an order terminating parental rights." *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). "If a trial is held, the respondent is entitled to a jury, the rules of evidence generally apply, and the petitioner has the burden of proving by a preponderance of the evidence one or more of the statutory grounds for jurisdiction alleged in the petition." *Id*. (quotation marks and citation omitted).

The trial court assumed jurisdiction over GK under MCL 712A.2(b)(5) and (6), which provide that the court has jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

> (5) Whose parent has substantially failed, without good cause, to comply with a court-structured plan . . . .

(6) If the juvenile has a guardian . . . , and the juvenile's parent meets both of the following criteria:

(A) The parent, having the ability to support or assist in supporting the juvenile, has failed or neglected, without good cause, to provide regular and substantial support for the juvenile for 2 years or more before the filing of the petition . . . .

(B) The parent, having the ability to visit, contact, or communicate with the juvenile, has regularly and substantially failed or neglected, without good cause, to do so for 2 years or more before the filing of the petition.

Respondent made no argument in her brief that contested the trial court's finding that respondent failed to comply with the court-structured plan—the ground for jurisdiction contained in MCL 712A.2(b)(5). The entirety of her argument was directed toward MCL 712A.2(b)(6). Though respondent summarily concluded that the trial court erred by finding statutory grounds for jurisdiction existed under MCL 712A.2(b)(5) and (6), this conclusory summary was insufficient to properly present a challenge to the trial court's finding of jurisdiction under MCL 712A.2(b)(5). See *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) ("An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims.") (quotation marks and citation omitted.) Therefore, even if respondent successfully challenged the trial court's findings regarding the other statutory ground for jurisdiction, the trial court's decision to take jurisdiction over GK would not require reversal because it also relied on MCL 712A.2(b)(5), which respondent did not sufficiently challenge on appeal. See *In re Long*, 326 Mich App 455, 460; 927 NW2d 724 (2018). However, the trial court also did not err by finding statutory grounds for jurisdiction pursuant to MCL 712A.2(b)(5) and (6)

Pursuant to MCL 712A.2(b)(5), a trial court can take jurisdiction of a minor child "[w]hose parent has substantially failed, without good cause, to comply with a court-structured plan . . . ." Here, respondent was given a court-structured plan that required her to complete two random drug screens per week, obtain and maintain stable housing and income, provide proof of substance abuse assessment and treatment, and follow the treatment recommendations. Respondent failed to comply with any of these requirements. Even on appeal, respondent does not argue that she complied with any of the requirements. Accordingly, the trial court did not clearly err by finding respondent failed to comply with her court-structured plan, and assuming jurisdiction under MCL 712A.2(b)(5).

Pursuant to MCL 712A.2(b)(6), a trial court can take jurisdiction of a minor child if the child has a guardian, and "[t]he parent, having the ability to support or assist in supporting the juvenile, has failed or neglected, without good cause, to provide regular and substantial support for the juvenile for 2 years or more before the filing of the petition . . ." and "[t]he parent, having the ability to visit, contact, or communicate with the juvenile, has regularly and substantially failed or neglected, without good cause, to do so for 2 years or more before the filing of the petition." It is undisputed that respondent failed to provide any kind of support for GK. What respondent does contest is the trial court's finding that she was able to provide support for GK.

-3-

Respondent was receiving GK's social security payment for the first 10 months GK was living with GK's aunt. Respondent never used this money to buy necessaries for GK, nor did respondent provide this money to GK's aunt. Therefore, it is clear respondent had the financial ability to provide support for GK while she was receiving GK's social security payments. Furthermore, respondent's lack of involvement throughout the proceedings made it difficult to ascertain whether she was able to provide support for GK during the guardianship. However, the trial court found respondent was an adult who was supporting herself, and used that finding to conclude respondent could have contributed to supporting GK. In light of respondent's total failure to contact the court, justify her lack of support of GK, or otherwise attempt to support GK, we conclude the trial court did not clearly err in its finding that respondent had the ability to provide some support to GK.

That respondent had the ability to contact GK through GK's aunt is clear. First, respondent knew GK's aunt's phone number because she called GK's aunt on December 24, 2018, and GK's aunt never changed her phone number. Second, respondent had the ability to contact family members by phone because she contacted GK's aunt a couple times near the beginning of the guardianship, and she stayed in regular contact with her mother. Despite knowing how to get in touch with GK and having the ability to do so, respondent did not visit with GK after her visit in March 2019, and did not have any form of contact or communication with GK after September 2019. In light of the foregoing, we conclude the trial court did not clearly err in finding a statutory ground for jurisdiction existed under MCL 712A.2(b)(6).

Respondent contends the improper suspension of her visitation with GK caused her to be unable to visit, contact, or communicate with GK, and that because of this, the trial court's assumption of jurisdiction under MCL 712A.2(b)(6) was improper. Even if there was merit in that argument, the trial court's decision to exercise jurisdiction is not subject to reversal because respondent failed to adequately challenge the trial court's assumption of jurisdiction under MCL 712A.2(b)(5). Further, the suspension of respondent's visitation did not influence her ability to call or otherwise remotely contact GK. Therefore, the trial court did not clearly err by assuming jurisdiction under MCL 712A.2(b)(6).

## II. TERMINATION

Respondent also argues the trial court clearly erred by terminating her parental rights because the court-structured plan failed to allow for visitation between respondent and GK, the trial court failed to make a finding that respondent was financially able to support and provide for GK, and the trial court's suspension of respondent's visitation time was the cause of respondent's failure to communicate with or visit GK.

"We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence. A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Richardson*, 329 Mich App 232, 251; 961 NW2d 499 (2019) (quotation marks and citation omitted).

Parents have a "fundamental right to direct the care, custody, and control" of their children. *Ferranti*, 504 Mich at 21. "To terminate parental rights, the trial court must find that at least one

of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Pursuant to MCL 712A.19b(3)(e), termination of parental rights is proper if "the parent has substantially failed, without good cause, to comply with a court-structured plan," and such failure has disrupted the parent-child relationship. Respondent was given a court-structured plan that required her to complete two random drug screens per week, obtain and maintain stable housing and income, provide proof of substance abuse assessment and treatment, and follow the treatment recommendations. It is undisputed that respondent failed to comply with any of these requirements. Even on appeal, respondent does not assert that she complied with any of the requirements.

Respondent's failure to adhere to the court-structured plan disrupted her relationship with GK because suspension of respondent's visitation was based on her failure to contact the trial court and show compliance with the court-structured plan. Had respondent adhered to the court-structured plan, she would have been able to work toward reestablishing visitation and reunification with GK. Respondent contends her relationship with GK was only disrupted because the trial court suspended her visitation rights with GK, and that this was improper since court-structured plans must provide for visitation time. However, in support of her argument, respondent cites to the requirements of a limited-guardianship placement plan, which is the alternative to a court-structured plan, applicable where the guardian is only serving as a limited guardian. MCR 5.404(E). It is evident GK's aunt was not a limited guardian since respondent was issued a court-structured plan, as opposed to a limited-guardianship placement plan. Accordingly, the requirements in MCR 5.404(E) did not apply to respondent's court-structured plan, meaning the trial court was not obligated to provide respondent with visitation rights. Therefore, the trial court did not clearly err by terminating respondent's parental rights pursuant to MCL 712A.19b(3)(e), because respondent failed to follow the court-structured plan, and consequently, was suspended from visiting GK, thereby disrupting her relationship with GK.[1]

Under MCL 712A.19b(3)(f), termination of parental rights is proper where the parent of a child in a guardianship, "having the ability to support or assist in supporting the minor, has failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of 2 years or more before the filing of the petition . . ." and "having the ability to visit, contact, or communicate with the minor, has regularly and substantially failed or neglected, without good cause, to do so for a period of 2 years or more before the filing of the petition." Respondent raises the same arguments under MCL 712A.19b(3)(f) that she raises under MCL 712A.2(b)(6). MCL 712A.2(b)(6) and MCL 712A.19b(3)(f) contain almost identical language,

---

[1] Furthermore, the trial court had good reasons to suspend respondent's visitation. First, when GK's aunt picked up GK from respondent, respondent appeared to be under the influence of heroin, and admitted she needed to check herself into a substance abuse facility. When respondent visited GK in March 2019, she appeared to still be using illegal drugs. Additionally, respondent sent vulgar, inappropriate texts to GK's aunt, and threatened to steal GK in the middle of the night and disappear with her. Thus, not only did the trial court have the freedom to design a court-structured plan that did not allow for visitation between respondent and GK, the trial court was justified in suspending visitation.

though the former applies to jurisdiction, and the latter to termination. Therefore, for the same reasons discussed earlier relating to the trial court's finding of jurisdiction under MCL 712A.2(b)(6), we conclude that the trial court did not clearly err by finding a statutory ground for termination under MCL 712A.19b(3)(f).

Under MCL 712A.19b(3)(g), a court may terminate parental rights if it finds clear and convincing evidence that "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Respondent failed to provide GK with the social security payments respondent was receiving on GK's behalf for 10 months, nor did respondent use the payments to provide GK with necessities. Respondent did not provide GK with any support after GK went to live with GK's aunt on December 24, 2018.

Respondent was also not properly providing for GK prior to December 24, 2018, when GK went to live with GK's aunt. Respondent was residing in a "dangerous" neighborhood and did not have proper clothes for GK. Further, when respondent released GK to GK's aunt, respondent appeared to be under the influence of heroin, and admitted she needed to check herself into a treatment facility for her substance abuse issues. Respondent still lacked proper housing and income when the trial court issued respondent her court-ordered plan in the fall of 2019. Accordingly, the evidence is clear respondent failed to provide GK with proper care or custody before sending her to live with GK's aunt, and failed to obtain suitable housing or employment to provide proper care and custody to GK when the guardianship began. Respondent's failure to be involved in the court proceedings or show any attempts to comply with her court-structured plan indicated there was no reasonable expectation that she would be able to provide proper care and custody to GK within a reasonable time, especially considering GK was young and needed stability.[2] The trial court did not clearly err when it found statutory grounds for termination of respondent's parental rights.

## III. BEST INTERESTS

Finally, respondent contends it was not in GK's best interests for the trial court to terminate her parental rights.

We review a "trial court's determination regarding the children's best interests" for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Clear error exists when the reviewing court has a firm and definite conviction that a mistake was made. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020).

---

[2] Although the trial court did not make a specific finding that respondent was financially able to provide proper care and custody to GK, the trial court found respondent was an adult who was supporting herself, and used that finding to conclude respondent could have provided financial support for GK. Further, respondent was receiving social security funds to assist her in supporting GK, indicating she had a steady source of income to help her provide proper care and custody to GK. Therefore, the record evidence demonstrates that respondent had the financial means to provide proper care and custody to GK.

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (quotation marks and citation omitted). "Best interests are determined on the basis of the preponderance of the evidence." *Id*. (quotation marks and citation omitted). The trial court should consider all of the evidence when determining whether it is in the child's best interests to terminate parental rights. *White*, 303 Mich App at 713. The trial court should consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714.

Several factors support the conclusion that the trial court did not clearly err in finding it was in the best interest of GK to terminate respondent's parental rights.

First, GK had no bond with respondent at the time of the trial. Respondent did not show good parenting ability because she failed to provide any support for or even contact GK during the time she was separated from GK. Respondent never even inquired about GK after March, 2019. Further, respondent's failure to adhere to her court-structured plan, or contact the court or GK's aunt, indicated GK's need for stability would likely not be met with respondent. Respondent also had a substance abuse issue.

In contrast, GK's aunt wanted to adopt GK, which would provide GK with permanency and stability. GK had a strong bond with her aunt, and they were rarely ever apart from each other. GK called her aunt "mother," and was bonded with her aunt's 15-month-old son. GK's aunt testified that she had the physical health and financial ability to provide for GK. Further, April Neubert, a Department of Health and Human Services (DHHS) employee who also serves as a court liaison for guardianship cases, testified GK's placement with her aunt was going very well, and that it would be in GK's best interests to terminate respondent's parental rights because there was no bond between respondent and GK. Neubert also noted how respondent's interactions with GK's aunt were inappropriate and threatening toward GK. Neubert also opined that, because of GK's age and how long she had been living with her aunt, it would take substantial time and effort to reunite GK and respondent. Additionally, Neubert testified GK was thriving with her aunt, was involved in extra-school activities, and was living in a stable home that offered permanency. In light of the foregoing, the trial court did not clearly err in finding it was in GK's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel