*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BARBER/ESPINOZA, Minors.

FOR PUBLICATION
September 19, 2024
9:00 a.m.

No. 369359
Lenawee Circuit Court
Family Division
LC No. 23-000033-NA

Before: GADOLA, C.J., and PATEL and YOUNG, JJ.

YOUNG, J.

Respondent appeals as of right the order terminating her parental rights to her minor children, CB and ME, under MCL 712A.19b(3)(b)(*i*) (parent's act caused child or sibling sexual abuse and sexual abuse is reasonably likely to happen again), (b)(*ii*) (parent failed to prevent sexual abuse and sexual abuse is reasonably likely to happen again) and (j) (reasonable likelihood of harm). Respondent contends the trial court violated her due process rights by failing to advise her of her appellate rights and not investigating her claim of a breakdown in the relationship with her counsel. Respondent also contends that the trial court clearly erred by finding that she subjected the children to aggravated circumstances under MCL 722.638. Because the trial court committed plain error affecting respondent's substantial rights, we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Petitioner filed a permanent custody petition that alleged it was contrary to the children's welfare to remain with respondent because of improper supervision, sexual abuse, sex trafficking, threatened harm, and drug abuse. The petition was based largely on a forensic interview with CB. At the preliminary hearing, caseworkers offered testimony about the statements CB made during the interview. CB disclosed that on two separate occasions, respondent observed adult men sexually abusing CB and failed to do anything to stop the abuse. The abuse included oral and anal penetration. CB stated that respondent allowed one of the incidents to occur in order to get drugs from the man. CB was between the ages of two and four during the first incident, and about nine years old during the second incident. CB witnessed respondent use drugs, and believed respondent abused heroin. CB suffered from substantial mental health issues for which she received treatment.

-1-

The trial court suspended all respondent's parenting time and contact with the children after a preliminary hearing, finding that the testimony offered by the caseworkers provided probable cause to support the allegations in the petition. In a subsequent written order, the trial court authorized the petition, found that reasonable efforts to prevent or eliminate removal were not required because of aggravated circumstances involving CB's disclosures about sexual abuse, and removed the children from respondent's care, placing them with their father. At no point did the trial court inform respondent of her right to appeal its removal decision.

At the beginning of the termination hearing, respondent told the trial court that she believed her attorney was doing a poor job counseling her because he did not believe respondent was innocent. The trial court informed respondent that issues between herself and her attorney did not concern the trial court, and that she needed to address the matter with the Public Defender's Office. However, in light of the issues between respondent and her attorney, the trial court adjourned the termination hearing. When the termination hearing resumed, respondent returned with the same attorney, who continued to represent her until the conclusion of the lower court proceedings.

The trial court ultimately found statutory grounds to assume jurisdiction, and it terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), and (j) after finding that respondent neglected her children, abused drugs, engaged in domestic violence against her wife, attempted suicide while in the presence of her children, and sex trafficked CB. The trial court found that termination was in the children's best interests because respondent was an unfit parent who caused the children life-long trauma; termination would provide the children with permanency, stability, and finality; and the children did well in their placement with their father. This appeal followed.

## II. STANDARDS OF REVIEW

We review for clear error a trial court's factual findings in child protective proceedings. MCR 2.613(C); *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). A finding of fact is clearly erroneous when the reviewing court has a definite and firm conviction that a mistake was made. *Id*. We review the trial court's application of statutes and court rules de novo. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

This Court's "primary task in construing a statute, is to discern and give effect to the intent of the Legislature." *In re AGD*, 327 Mich App 332, 343; 933 NW2d 751 (2019). "The words used by the Legislature in writing a statute provide us with the most reliable evidence of the Legislature's intent." *Drew v Cass County*, 299 Mich App 495, 499; 830 NW2d 832 (2013). Courts must give meaning "to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent." *Vermilya v Delta College Bd of Trustees*, 325 Mich App 416, 419; 925 NW2d 897 (2018) (quotation marks and citation omitted). When determining the meaning of a statute's plain language, this Court examines "the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme." *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, 252; 901 NW2d 534 (2017).

However, because respondent never raised her claims of error in the trial court, these issues are unpreserved. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Unpreserved errors in child-protective proceedings are reviewed for plain error. *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Utrera*, 281 Mich App at 9; see also *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) ("the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings") (cleaned up). The party asserting plain error bears the burden of persuasion with respect to prejudice. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 70 (2020).

## III. ANALYSIS

Respondent argues the trial court violated her due process rights by failing to advise her of her appellate rights and not investigating her claim of a breakdown in the relationship with her counsel. Respondent also contends the trial court clearly erred by finding that she subjected the children to aggravated circumstances under MCL 722.638. We first address respondent's claim of error regarding the trial court's aggravated-circumstances finding.

## A. AGGRAVATED CIRCUMSTANCES

Respondent specifically argues that she was entitled to reunification services because " 'sex trafficking' is not a defined or listed basis for aggravated circumstances . . . ." Respondent also questions CB's credibility and argues that she never trafficked her daughter. Respondent acknowledges that she made sufficient mistakes for the trial court to take jurisdiction of the children, "such as using illegal drugs while being the[ir] primary caregiver," but argues that reunification efforts were necessary with no aggravating circumstance present. Notably, petitioner "concedes, unfortunately, that sex trafficking one's child is not considered an aggravating circumstance under MCL 722.638," but argues that the trial court nevertheless correctly determined that reunification efforts were unwarranted because "it would be detrimental to the children's wellbeing." We conclude that the trial court erred when it ruled that aggravating circumstances existed and that petitioner did not need to offer reunification services to respondent. This error was plain, and this plain error prejudiced respondent.

"Reasonable efforts to reunify the child and family must be made in *all* cases except those involving aggravated circumstances . . . ." *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022) (omission in original; quotation marks and citation omitted). "Absent aggravating circumstances, the DHHS has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *Id*. (quotation marks and citation omitted).[1]

---

[1] To the extent petitioner argues that reunification services were unnecessary because it requested termination at the initial disposition, we disagree. See *Simonetta*, 340 Mich App at 707 n 2 ("Many opinions issued by this Court incorrectly state that the DHHS is not required to provide

Under MCL 712A.19a(2),

[r]easonable efforts to reunify the child and family must be made in all cases except if any of the following apply:

(a) There is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in [MCL 722.638(1) and (2)].

As relevant here, MCL 722.638 states:

(1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:

(a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

* * *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

* * *

(2) In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, the department shall include a request for termination of parental rights at the initial dispositional hearing as authorized under section 19b of chapter XIIA of 1939 PA 288, MCL 712A.19b.

Here, CB alleged she was sexually abused by two of respondent's male friends, respondent was aware of this and did not act to protect CB, and respondent allowed one of these assaults to occur in exchange for drugs from the man. The trial court found that CB's allegations of abuse constituted aggravated circumstances under MCL 722.638(1) and (2), making reunification efforts unnecessary.

CB unquestionably alleged abuse via criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate. But this case is complicated because the sexual abuse was committed by an unrelated adult not living in the home, while respondent allegedly facilitated or allowed the abuse. Thus, the key question here is whether criminal sexual

---

reunification services when termination of parental rights is the agency's goal.") (quotation marks and citation omitted).

-4-

conduct against a minor child enumerated in MCL 722.638(1)(a)(ii) must be perpetrated by "a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home" to constitute an aggravated circumstance warranting termination at the initial disposition. Notably, because respondent never challenged petitioner's claim regarding aggravated circumstances in the trial court apart from questioning CB's credibility, the court never substantively addressed MCL 722.638 and whether the unique circumstance at issue is indeed contemplated as an aggravated circumstance therein.

This Court has addressed this precise question under analogous facts in two relatively recent unpublished[2] cases. This Court first decided *In re Boyce*, unpublished per curiam opinion of the Court of Appeals, issued January 23, 2020 (Docket No. 348992). *Boyce* involved a minor child's allegations that the respondent, the child's mother, "accept[ed] money to allow a 34-year-old man to have sex with [the child]." *Id*. at 1-2.

> The man in question, Oscar Edwards, admitted that he engaged in sex with the child; he denied that he paid [the] respondent, but asserted that [the] respondent was present and aware of the situation. . . .
>
> As the DHHS and police investigation unfolded, the allegations of human trafficking became more tenuous. Instead, the record suggests that [the child] was . . . troubled . . . [and] sought out older boys on the Internet. She then fell into an improper (and illegal) relationship with Edwards. As [the child] was only 12 years old, she could not consent to any sexual relationship, even one with an older teenager, and certainly not one with a 34-year-old man. Although [the] respondent had not instigated the sexual encounters, she admitted that she knew [the child] had engaged in sexual acts with several older males. [The r]espondent responsibly authorized the insertion of a subcutaneous birth control device in [the child]'s arm. However, [the] respondent failed to protect her 12-year-old daughter from the sexual predators she encountered. [The r]espondent admitted that she had met 34-year-old Edwards, but believed he was only 16 or 17 years old. She asserted in a police interview that a 16 or 17-year-old male was an "age appropriate" romantic partner for her 12-year-old daughter. And [the] respondent conceded that she left Edwards alone in her hotel room with [the child], enabling Edwards to sexually penetrate her vulnerable daughter. [*Id*. at 2 (footnotes omitted).]

The trial court found that aggravating circumstances existed and reunification efforts were unnecessary, and the respondent appealed. *Id*. at 2-3. Affirming this decision, this Court reasoned:

> On th[e] record [here], the court could easily determine that [the child] was the victim of "[c]riminal sexual conduct involving penetration" and that [the] respondent "plac[ed] the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk." Accordingly,

---

[2] "Unpublished opinions are . . . not binding authority but may be persuasive or instructive." *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).

we discern no error in the circuit court's assessment that reunification efforts were not required in this case. [*Id*. at 4.]

Therefore, while it did not discuss the statutory language in detail, *Boyce* indicates that a parent subjects a child to aggravating circumstances when the child is sexually abused by an unrelated adult living outside the home *if* the parent placed the child at an unreasonable risk of harm because of their failure to take reasonable steps to intervene to eliminate that risk. This would clearly apply where a parent actively sex traffics their own child. However, this Court more recently reached a contrary interpretation of MCL 722.638 in *In re Bergren*, unpublished per curiam opinion of the Court of Appeals, issued June 3, 2021 (Docket No. 354767).

In *Bergren*, DHHS argued in the trial court that aggravated circumstances existed and reunification efforts were not required because "[the] respondent knew his daughter had been abused and he returned her to a home where that abuse occurred, and, thereafter, he allowed the sexual abuse to continue." *Id*. at 3-4. The trial court "concluded that, even though the facts of this case do not constitute 'aggravated circumstances' for purposes of MCL 722.638(1), MCL 722.638(2) authorize[d] the court's determination that reasonable efforts to reunify [the] respondent with his child were not required in this case because [the] respondent had put the child at risk." *Id*. at 4. This Court concluded that this was legal error, reasoning as follows:

> MCL 722.638(2) requires a two-part analysis. It requires DHHS to include a request for termination of parental rights at the initial disposition if (1) the parent is the perpetrator or if the parent placed the child at an unreasonable risk of harm *and* (2) the filing of the petition is mandatory under MCL 722.638(1). The court did not appear to consider both factors but, instead, only focused on [the] respondent's role in exposing his daughter to an unreasonable risk of harm. However, according to the plain language of the statute, a petition mandated by subsection (1) is necessary in order to trigger subsection (2). Yet, the trial court acknowledged, correctly, that the facts do not bring this case within the ambit of MCL 722.638(1).

> As indicated above, MCL 722.638(1) requires DHHS to file a petition for authorization under MCL 712A.2 where there are any of several aggravating circumstances. In light of the facts in this case, the most relevant circumstance is MCL 722.638(1)(a)(*ii*): "Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate." . . . However, *for criminal sexual conduct involving penetration to constitute an aggravating circumstance under MCL 722.638(1), the perpetrator must be "a parent, guardian, or custodian, or person who is 18 years of age or older and who resides for any length of time in the child's home . . . ."* Where, as here, the perpetrator was less than 18 years old and is neither a parent, guardian, or custodian of the child, the conduct at issue is not an "aggravated circumstance" for purposes of MCL 722.638(1). Because a petition was not mandated under subsection (1) of MCL 722.638, subsection (2) does not apply. Accordingly, the trial court's reliance on MCL 722.638(2) as authority to support its ruling that DHHS did not have to make reasonable reunification efforts was clearly erroneous. [*Id*. at 4-5 (footnote omitted; emphasis

added).]

As such, and contrary to *Boyce*, *Bergren* instructs that criminal sexual conduct as an aggravating circumstance must be committed by a parent or other specifically listed person in MCL 722.638(1)(a). We conclude that *Bergren* provides the proper interpretation. Critically, *Boyce* incorrectly conflates the related but distinct requirements of MCL 722.638(1) and (2), both of which must be separately satisfied to establish an aggravating circumstance warranting termination at the initial disposition. By the statute's plain language, MCL 722.638(2) requires that DHHS file for termination at the initial disposition when the parent is "suspected of placing the child at an unreasonable risk of harm because of the parent's failure to take reasonable steps to intervene to eliminate that risk" *and* the petition is mandatory under MCL 722.638(1). And MCL 722.638(1)(a) clearly contemplates abuse perpetrated by only certain limited categories of people. Indeed, allowing aggravating circumstances to apply generally to cases involving criminal sexual conduct perpetrated by anyone so long as the parent is "suspected of placing the child at an unreasonable risk of harm because of the parent's failure to take reasonable steps to intervene to eliminate that risk" would render superfluous the Legislature's clear instruction that the various categories of abuse be perpetrated by "a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home."

We note that the trial court stated at respondent's termination hearing, after its initial determination regarding aggravated circumstances, that reasonable efforts were not made because "the Court[] in the previous order determined that it would be detrimental to the children's health and safety." To the extent the court was relying on MCL 722.638(2)'s language related to a parent placing a child "at an unreasonable risk of harm" without considering that respondent herself did not engage in the sexual abuse at issue, it committed the same error as in *Bergren*.[3]

Where, as here, the perpetrators were neither a parent, guardian, or custodian of CB, and never resided with the children, the conduct at issue is not an "aggravated circumstance" for

---

[3] We acknowledge that MCL 722.638(3) alludes to other circumstances where a petitioner may request termination at the initial disposition even if the facts do not support the existence of aggravated circumstances. See MCL 722.638(3) ("If the department is considering petitioning for termination of parental rights at the initial dispositional hearing as authorized under [MCL 712A.19b], even though the facts of the child's case do not require departmental action under subsection (1) . . . ."). Notably, in addition to when a trial court finds aggravated circumstances under MCL 722.638(1) and (2), reasonable efforts also need not be made when a parent has been convicted of various listed offenses. See MCL 712A.19a(2)(b). We conclude that MCL 722.638(3) relates to these other circumstances, none of which are at issue here. Further, MCL 722.638(3) shows that the Legislature can and has specifically distinguished when a parent should be held responsible for allowing or facilitating another's conduct. Compare MCL 722.638(3)(*i*) (parent convicted of murder of another child) with MCL 722.638(3)(*iii*) (parent convicted of aiding or abetting in the murder of another child).

purposes of MCL 722.638(1).[4]  Because a petition was not mandated under subsection (1) of MCL 722.638, subsection (2) does not apply.  Accordingly, the trial court's finding of aggravated circumstances under MCL 722.638 and associated ruling that petitioner did not have to make reasonable reunification efforts were clearly erroneous.[5]  Even so, reversal is only warranted if the trial court's error was plain, i.e., clear or obvious, and prejudiced respondent.

"A 'clear or obvious' error . . . is one that is not subject to reasonable dispute." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (quotation marks and citation omitted).  We acknowledge the dearth of any published authority addressing the facts and question at issue, and indeed the conflicting unpublished authority on the matter.  Nevertheless, we conclude that because our interpretation of MCL 722.638 is clearly provided by the statute's plain language and supported by a recent case from this Court, this is not an issue subject to a reasonable dispute.

Concerning prejudice, we acknowledge respondent merely contends there was no factual basis for finding aggravated circumstances and later terminating her parental rights, and that "she is entitled to reasonable efforts toward reunification, and she looks forward to the opportunity to work with [petitioner] to get her children returned to her."  Respondent asserts tangentially under a separate issue[6] that the trial court prejudiced her because had she known she could have appealed

---

[4] We acknowledge the extremely serious facts of this case.  But while we might personally view a parent sex trafficking their child as particularly egregious conduct, that is not our role in this case or in our system of jurisprudence.  If the Legislature desires such conduct to constitute an aggravating circumstance obviating the need for reunification efforts, it should amend the statutory scheme to so provide.

[5] We find no issue with the trial court's underlying factual finding that CB was subjected to the sexual abuse alleged, which respondent either facilitated or knew about without intervening. Respondent essentially challenges the credibility of CB's allegations, but we defer to the trial court on this matter.  See *In re Schadler*, 315 Mich App 406, 408-409; 890 NW2d 676 (2016) ("In applying the clear error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.") (quotation marks and citation omitted); *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014) ("We defer to the special ability of the trial court to judge the credibility of witnesses.").  Further, while respondent claims that the trial court was obligated to investigate whether CB's allegations were credible before concluding that aggravated circumstances were present, she fails to include any legal authority to support this claim.  See *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (holding that an issue is abandoned when a party failed to cite any supporting legal authority).  And to the extent respondent contends that the trial court overlooked readily available evidence, none of the evidence she references was presented at the preliminary hearing.  Even so, the trial court explicitly found CB credible at the termination hearing after respondent presented her side of the facts, including those she now references.

[6] Respondent provides two distinct assertions of prejudice regarding her claim that the trial court erred by not advising of her appellate rights.  The first of these is not applicable at all to the instant subissue and is only discussed in the next subsection of this opinion.  Because the second assertion

the trial court's finding regarding aggravated circumstances, she would have done so and demonstrated that no such circumstances existed. According to respondent, she was prejudiced because the trial court improperly denied her reunification services and parenting time, and because she "suffer[ed] an unsubstantiated termination of her parental rights [that] deprived her of her contact with her children . . . [.]"

Notably, respondent provides no substantive argument that the outcome of this case was affected by the trial court's error, i.e., that she would have successfully attained reunification if services were properly provided. See *Pederson*, 331 Mich App at 463 ("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.") (citation omitted); see also *In re MJC*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 365616) (2023), slip op at 7-8 (the trial court plainly erred by failing to provide and regularly update a case service plan, but reversal was unwarranted under the prejudice prong because the respondent could not establish "that he would have successfully attained reunification if a proper case service plan had been prepared and regularly updated.").

Nevertheless, we conclude that the trial court's error prejudiced defendant because (1) it is unclear how an aggrieved respondent could establish outcome-determinative error concerning the denial of reunification services altogether and (2) the error improperly dispensed with a critical aspect of a child protective proceeding—the requirement to offer reunification services before terminating parental rights—affected the very framework within which this case progressed, undermined the foundation of the rest of the proceedings, and impaired respondent's fundamental right to direct the care, custody, and control over her children.

Regarding the difficulty to establish outcome-determinative error, although we have not found authority addressing the matter, it logically appears that the error at issue would categorically deprive respondents the ability to challenge the case's outcome, or at least hinder this ability, because reunification services are the primary avenue through which a parent can demonstrate their willingness and ability to parent once a case commences. Indeed, respondent very well could have demonstrated that termination was unwarranted if she was successful with services, but she was erroneously deprived any opportunity to do so.

Moreover, we find the trial court's prejudicial errors in *Ferranti*, 504 Mich 1, analogous to the error here. In *Ferranti*, our Supreme Court concluded that the respondents were prejudiced by the trial court's adjudicative errors in taking the respondents' pleas. *Id*. at 29-31.

> The respondents were deprived of their fundamental right to direct the care, custody, and control over [their child] based on . . . invalid pleas. And the invalid pleas relieved the Department of its burden to prove that the respondents were unfit at a jury trial, with all of its due-process protections. These constitutional deprivations affected the very framework within which [the] respondents' case

---

of prejudice is tangentially related to the aggravated-circumstances issue, however, we discuss it here first.

proceeded. There was error, it was plain, and it affected the respondents' substantial rights.

Finally, we conclude that the error here seriously affected the fairness, integrity, or public reputation of judicial proceedings. . . . Th[e trial court's] failure[s] resulted in the respondents' constitutionally defective pleas and undermined the foundation of the rest of the proceedings. The defective pleas allowed the state to interfere with and then terminate the respondents' fundamental right to parent their child. Due process requires more: either a plea hearing that comports with due process and the court rule or, if [the] respondents choose, a trial. [*Id*. at 30-31 (citations omitted).]

As an initial matter, we acknowledge that "it is the adjudication that protects the parents' fundamental right to direct the care, custody, and control of their children, while also ensuring that the state can protect the health and safety of the children," *id*. at 29 (cleaned up), and that *Ferranti* partially relied on the specific due-process protections provided in adjudication trials. Here, the error took place before the adjudication, which was not tainted in any constitutional manner. But the error nevertheless impaired respondent's fundamental right to direct the care, custody, and control over her children in the first instance, and it unquestionably affected the very framework within which this case progressed and undermined the foundation of the rest of the proceedings. As explained, there is simply no way to know how termination may have proceeded differently when respondent was improperly denied any opportunity to rectify her situation and demonstrate a willingness and ability to parent notwithstanding her earlier concerning conduct. For these reasons, we apply *Ferranti* here and conclude that the trial court's error was prejudicial and affected respondent's substantial rights. We reverse the trial court's order terminating respondent's parental rights and remand for further proceedings consistent with this opinion.[7]

## B. ADVICE OF RIGHTS

Respondent also argues that this Court should vacate the trial court's order terminating her parental rights because the trial court failed to advise respondent of her appellate rights concerning the children's removal. We conclude that the trial court committed plain error by failing to advise respondent of her appellate rights, which compounded the prejudice already discussed.

Respondent contends that the trial court violated MCR 3.971(B)(6)-(8) because it failed to advise her of her right to appeal the trial court's finding from the preliminary hearing that

---

[7] As a final note, termination may well ultimately be warranted after further proceedings including reunification services. We leave this question for the trial court but note that the trial court previously considered not only the sexual-abuse allegations, but also respondent's suicide attempt, her neglect of CB's physical and mental health needs, her criminal history, her drug abuse, the trauma respondent caused ME, respondent's refusal to cooperate with Children's Protective Services (CPS), domestic violence between respondent and her spouse, and respondent's lifestyle.

-10-

aggravated circumstances were present. MCR 3.971(B)(6)-(8) set forth the following requirements for trial courts:

> Before accepting a plea of admission or plea of no contest, the court must advise the respondent on the record or in a writing that is made a part of the file:
>
> \* \* \*
>
> (6) that appellate review is available to challenge any errors in the adjudicatory process, which may be challenged in an appeal from the court's initial order of disposition;
>
> (7) that an indigent respondent is entitled to appointment of an attorney to represent the respondent on any appeal as of right and to preparation of transcripts; and
>
> (8) the respondent may be barred from challenging the assumption of jurisdiction in an appeal from an order terminating parental rights if they do not timely file an appeal of the initial dispositional order under MCR 7.204 or a delayed appeal under MCR 3.993(C).

The foregoing court rules only apply to situations where the respondent offered a plea to establish a basis for the trial court to authorize a petition. MCR 3.971. Respondent did not offer a plea at the preliminary hearing, or at any other point during this case. During the preliminary hearing, the trial court specifically noted that respondent was not offering a plea. Because respondent did not offer a plea, MCR 3.971(B) is not applicable. Accordingly, the trial court did not violate MCR 3.971(B)(6)-(8) by failing to advise respondent of her appellate rights at the preliminary hearing.

Nevertheless, there is a separate court rule that requires trial courts to advise respondents of their appellate rights when removing a child. MCR 3.965(B)(15) states, "If the court orders removal of the child from a parent's care or custody, the court shall advise the parent, guardian, or legal custodian of the right to appeal that action." The trial court did not advise respondent of her right to appeal its decision to remove the children. Therefore, the trial court violated MCR 3.965(B)(15), committing clear or obvious error in the process. See *Randolph*, 502 Mich at 10.

As noted, respondent provides two assertions of prejudice under this error. First, respondent alleges that she was prejudiced because the trial court's failure to inform her of her appellate rights reinforced her belief that the trial court was not interested in being fair or objective with respect to her legal position. But respondent does not attempt to demonstrate how her personal beliefs about the trial court affected the outcome of the proceedings. See *Pederson*, 331 Mich App at 463 ("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.") (citation omitted); see also *Bill & Dena Brown Trust*, 312 Mich App at 695 ("An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims.") (quotation marks and citation omitted). Therefore, we reject this assertion of prejudice.

-11-

As already discussed, respondent also claims that the trial court's plain error prejudiced her because had she known she could have appealed the trial court's finding regarding the presence of aggravated circumstances, she would have done so and demonstrated that there were no aggravated circumstances. She emphasizes that the error led to the improper deprivation of contact with her children and eventual termination of her parental rights. We reiterate that respondent was prejudiced because the trial court's erroneous aggravated-circumstances finding impaired respondent's fundamental right to direct the care, custody, and control over her children in the first instance, and it unquestionably affected the very framework within which this case progressed and undermined the foundation of the rest of the proceedings. Notably, this occurred in conjunction with the initial removal of respondent's children. Thus, had the court instructed respondent of her appellate rights at this time as required, she very well could have succeeded on the aggravated-circumstances issue before the case proceeded immediately to termination.

## C. BREAKDOWN OF RELATIONSHIP WITH COUNSEL

Respondent argues further that the trial court violated Code of Judicial Conduct, Canon 3(B)(1), by failing to investigate respondent's claim about the breakdown in her relationship with her attorney. We conclude that the trial court did not violate Code of Judicial Conduct, Canon 3(B)(1) by failing to further investigate respondent's claim that her attorney was doing a poor job representing her.

Code of Judicial Conduct, Canon 3(B)(1) states, "A judge should diligently discharge administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials." Preliminarily, respondent provides no caselaw or other authority demonstrating that Code of Judicial Conduct, Canon (3)(B)(1) requires trial judges to intervene in the attorney-client relationship. By failing to do so, respondent abandoned this argument. *Bill & Dena Brown Trust*, 312 Mich App at 695 (holding that when "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned.") (quotation marks and citation omitted).

Moreover, the caselaw concerning this canon of judicial conduct interprets administration and administrative responsibilities within the context of behind-the-scenes court procedure and policy, not judicial investigations of attorney-client relationships. See *In re Davis*, 511 Mich 1003, 1005 (2023) (holding that the judge violated Code of Judicial Conduct, Canon (3)(B)(1) by failing to abide by the performance improvement plan, intentionally refusing to follow orders, sending ominous communications to court staff, and intentionally disconnecting the recording equipment inside the courtroom);[8] see also *In re Trudel*, 465 Mich 1314, 406; 638 NW2d 405 (2002) (holding that the judge violated Code of Judicial Conduct, Canon (3)(B)(1) by using court facilities and equipment for his personal use); *In re Seitz*, 441 Mich 590, 622; 495 NW2d 559 (1993) (holding that the judge violated Code of Judicial Conduct, Canon (3)(B)(1) by consistently failing to file

---

[8] "[A]n order of this Court is binding precedent on the Court of Appeals if it constitutes a final disposition of an application and contains a concise statement of the applicable facts and reasons for the decision." *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 371; 817 NW2d 504 (2012) (citation omitted).

-12-

required reports). Because Code of Judicial Conduct, Canon (3)(B)(1) does not mandate that a trial judge investigate the quality of attorney-client relationships, and the available caselaw does not interpret it as so, respondent's argument lacks merit.

It is worth noting that respondent did not terminate her attorney's representation. Her original attorney continued to represent respondent throughout the entire lower court proceedings. Had the relationship truly deteriorated, representation would not have been possible. Moreover, respondent did not allege that she was denied the effective assistance of counsel. Therefore, even if respondent was able to show that plain error occurred, she would not be able to demonstrate prejudice.

Reversed and remanded. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Michael F. Gadola
/s/ Sima G. Patel